**Mary M. LUCAS, Executrix of the Estate of Robert F. Lucas, Plaintiff-Appellant and Cross-Appellee,**

v.

**GULF & WESTERN INDUSTRIES, INC., a corporation and Amax, Inc., a corporation, Defendants-Appellees,**

v.

**NORANDA MINES, LIMITED, a corporation, Defendant-Appellee and Cross-Appellant.**

Nos. 81–1169, 81–1377.

United States Court of Appeals, Third Circuit.

Argued Oct. 13, 1981.

Decided Dec. 1, 1981.

Dominick A. Mazzagetti (argued), Bennett, Hueston, Mueller & Mazzagetti, Florham Park, N. J., for Mary M. Lucas Executrix of the Estate of Robert P. Lucas.

Stephen R. Knox (argued), Clyde A. Szuch, Pitney, Hardin & Kipp, Morristown, N. J., for Gulf & Western Industries, Inc.

Michael D. Freeborn (argued), Eugene H. Ruark, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., Frank J. Miele, Riker, Danzig, Scherer & Hyland, Morristown, N. J., for Noranda Mines Limited.

Anthony Limitone, Jr., Morristown, N. J. (argued), for Amax, Inc.

Before HUNTER, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The principal question in this case is whether a New Jersey broker may receive a commission for the sale of mineral interests located in Florida. The district court granted summary judgment for the defendants, finding that the broker's agreement was void because he was not registered under the Florida Real Estate License Law. As we read the statute, it applies only to real estate brokerage or sales activity conducted within Florida. Since there is no evidence that the broker performed any services in that state, we vacate the judgment.

A subsidiary issue is the amenability of a Canadian corporation to service under New Jersey's long-arm statute based on the activities of its wholly-owned American subsidiaries. Because the record is insufficient to determine the operational relationships between the various corporate entities and the situs of their activities, we remand for further proceedings.

Mary M. Lucas, widow of Robert P. Lucas and executrix of his estate, brought this suit against defendants Gulf & Western Industries, Noranda Mines Limited and

AMAX Inc. in the New Jersey Superior Court, alleging breach of contract and tortious interference with contract. She claimed her husband had earned a brokerage commission under an agreement with Gulf & Western to find a purchaser for its share of a phosphate property in Florida. AMAX removed the case to the United States District Court for New Jersey. After some discovery, the district court granted the defendants' motion for summary judgment, holding the contract with Gulf & Western void and unenforceable as a matter of Florida law. The court also denied Noranda's motion to dismiss based upon lack of personal jurisdiction.

Robert P. Lucas was a geologist who, in May 1977, wrote from the office in his New Jersey home to a division of Gulf & Western in Bethlehem, Pennsylvania. In the letter, he offered his services as a broker to secure a purchaser for Gulf & Western's share of a joint venture phosphate operation in DeSoto County, Florida. Lucas enclosed a contract form reciting that he would be entitled to a commission if a sale of Gulf & Western's "mineral interests" resulted from his efforts.

One month later, Gulf & Western's associate counsel in Bethlehem responded with a draft of an agreement which he had prepared. This document, which referred to Lucas as "Broker," stated that he had represented himself as having "potential clients who may be interested in acquiring G & W's forty-nine percent (49%) interest in a phosphate rock property ... in DeSoto County, Florida." Gulf & Western agreed to pay Lucas a $150,000 commission if a sale resulted from his efforts within one year after the expiration of the contract's 180 day life. (Later, the parties agreed to extend the contract for an additional 90 days.) There was also a proviso that the agreement was to be governed by the laws of Florida. Lucas promptly signed the Gulf & Western draft and returned it to Bethlehem, where Gulf & Western executed the agreement. Thereafter, Lucas contacted a number of prospective purchasers and actively worked on the matter until his death in January 1978.

In May 1979, Gulf & Western sold its interest in the Florida property to its co-venturer in the project, Noranda Phosphate, Inc., a wholly-owned subsidiary of Noranda, Inc. Some months later, Noranda, Inc. conveyed all the Phosphate stock to its parent, defendant Noranda Mines Ltd., which in turn transferred the Phosphate shares to AMAX as part of an exchange of subsidiaries.

The defendants deny that the sale of Gulf & Western's interest resulted from Lucas' brokerage activities but the district court did not reach the merits of that controversy. Instead, summary judgment for the defendants was granted on the basis of Florida's Real Estate License Law, which invalidates agreements to pay commissions to unregistered brokers.

Defendant Noranda Mines Ltd., a Canadian corporation, also moved for dismissal on the additional ground that it was not subject to jurisdiction under New Jersey's long-arm statute because it did not do business in the state. It appears that Noranda Mines owns all of the stock of Noranda, Inc., a Delaware corporation, and Noranda, Inc., in turn, owned 100% of the stock of Noranda Phosphate and Noranda Metal Industries, Inc., two other Delaware corporations. Noranda Mines admits that at one time Noranda Metal did transact business in New Jersey, but defendant asserts that Metal's activity there ceased in 1977 and that its Certificate of Authority in the state lapsed in December 1979. In any event, it is alleged that Noranda Metal had no connection with the phosphate transactions. The complaint in this case was filed in February 1980.

In his bench opinion, the district judge stated that Lucas had dealings "... with an outfit called Noranda. Which Noranda it was is open to serious question." Since he believed that Noranda Mines of Canada had been "... present in New Jersey through subsidiaries or a subsidiary," there was a factual basis for invoking the long-arm statute and therefore the motion for dismissal was denied.

Plaintiff has appealed from the entry of summary judgment and Noranda Mines Ltd. has cross-appealed from the order denying its motion.

## I

■ We turn first to the entry of summary judgment based on the Real Estate License Law. The parties accept the district court's determination that Florida law governs. We therefore follow the same course.[1]

At the time the events in this case occurred, the Florida statute read in pertinent part:

"(2) Every person who shall, in this state, for another, and for a compensation or valuable consideration . . . offer, attempt or agree to . . . negotiate the sale, exchange, purchase or rental of any real property, or any interest in or concerning the same, including mineral rights . . .; and every person who shall take any part in the procuring of sellers, purchasers. . . . or who shall direct or assist in the procuring of prospects. . . .; each and every such person shall be deemed and held to be a 'real estate broker' or a 'real estate salesman'. . . ."

Fla.Stat.Ann. § 475.01 (West Supp.1978). A complementary provision stated:

"No contract for a commission or compensation for any act or service enumerated in subsection (2) of § 475.01 shall be valid unless the broker or salesman shall have complied with this chapter in regard to registration . . . ."

Fla.Stat.Ann. § 475.41 (West Supp.1978).

Gulf & Western contends that the statute made the brokerage agreement invalid and unenforceable. Plaintiff asserts that because it drew up the contract and benefited by it, Gulf & Western should be estopped from denying validity. The district court rejected plaintiff's argument on the ground that accepting it would, in effect, nullify the Florida statute. In view of our disposition of the case, we need not meet the estoppel contention.

We begin with the observation of the United States Court of Appeals for the Fifth Circuit that the Real Estate License Law is "highly penal, and therefore to be strictly construed." *Hughes v. Chapman*, 272 F.2d 193, 196 (5th Cir. 1959). The Florida Supreme Court has not construed the statute in any context relevant to the issues before us, but the state district courts of appeal have applied it instructively in somewhat related circumstances. After acknowledging the *Hughes v. Chapman* rule of restrictive interpretation, Florida's Third District Court of Appeal went on to say: "In addition, the purpose of the Real Estate Licensing Act is to protect the public from being forced to deal with dishonest or unscrupulous real estate operators, rather than to permit one party to gain unconscionable advantage by avoiding a just obligation which he has contracted to pay." *Geneva Investment, Ltd. v. Trafalgar Developers, Ltd.*, 274 So.2d 581, 583–584 (Fla. App.1973), *cert. disch.* 285 So.2d 593 (Fla. 1973), *appeal after remand*, 305 So.2d 274 (Fla.App.1974).

■ We give great weight to the language of § 475.01(2) itself. By choosing to define a real estate broker as "[e]very person who shall, *in this state*," agree to perform certain activities in connection with real estate transactions, the legislature appropriately chose to regulate only those individuals who perform their activities within the state. The Real Estate License Law was not intended to reach persons who render brokerage services outside of Florida.

This interpretation is consistent with the Florida appellate opinions. In *Pokress v. Tisch Florida Properties, Inc.*, 153 So.2d 346 (Fla.App.1963), a Florida broker who had

---

1. A real estate brokerage agreement is a contract of employment, not a sale or other contract conveying an interest in land. The situs of the land, therefore, is not controlling for choice of law purposes. *See Tanenbaum v. Sylvan Builders, Inc.*, 29 N.J. 63 148 A.2d 176 (1959). The remedy is governed by the law of the forum, which will not grant relief if contrary to its strong public policy. We note that the New Jersey licensing law, unlike that of Florida, does not mention mineral rights.

utilized the services of out-of-state brokers to solicit purchasers in their respective states sued to recover his commission. The trial court dismissed the suit on the theory that the Real Estate License Law required all of the brokers to be registered in Florida where the land was located. On appeal, the court concluded that the statute did not bar the claim and reversed. The court noted the equities of the situation and commented favorably on the argument that "the activities for which a person is required to be registered as a real estate broker are only those which take place in this state." 153 So.2d at 351.

A similar rationale appears in *Kagan v. Garfinkle*, 312 So.2d 778 (Fla.App.1975). There a New York broker sought to recover his commission on the sale of property located in Florida. The court held that defendants could not successfully invoke the bar of the Real Estate License Law without pleading that the New York broker actually performed his services in Florida. Again, in a case where two out-of-state brokers joined with a Florida broker as plaintiffs against a real estate purchaser, the District Court of Appeals held it necessary for the defendants raising the licensing statute to specify "whether brokerage services were rendered in Florida and, if so, by whom." *Krieger v. Ocean Properties, Ltd.*, 387 So.2d 1012, 1014 (Fla.App.1980). In the absence of that factual determination, judgment on the pleadings against the brokers was set aside.

The *Krieger* court distinguished cases where recovery was denied, such as *Paris v. Hilton*, 352 So.2d 534, (Fla.App.1977), *cert. denied*, 365 So.2d 713 (Fla.1978), *cert. denied*, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979), and *Meadows of Beautiful Bronson, Inc. v. E. G. L. Investment Corp.*, 353 So.2d 199 (Fla.App.1977), *cert. denied* 360 So.2d 1248 (Fla.1978), because in those in-

stances the brokerage services were performed in Florida. Into that category also fall *First Equity Corp. v. Riverside Real Estate Investment Trust*, 307 So.2d 866 (Fla.App.1975), *Bradley v. Banks*, 260 So.2d 256 (Fla.App.1972), and *Outland v. Wood*, 224 So.2d 352 (Fla.App.1969).

In sum, the state decisions show that the statute applies only where a broker is demanding his commission for activities performed in Florida. No case holds the statute applicable in a situation where a nonresident performed all of his services outside the state.

As we noted earlier, the Florida Supreme Court has not yet addressed this issue. We find the views expressed by the intermediate appellate courts to be persuasive, however, and we believe the state Supreme Court would adopt them if the question were presented to it for decision.[2]

From what we have been able to glean from the record in the case at hand, none of Lucas' services took place in Florida. Apparently, he acted as an intermediary between Gulf & Western and prospective purchasers by correspondence and telephone calls originating from his New Jersey office.[3] As we read the Florida courts' opinions, these activities do not come within the licensing statute. Furthermore, substantial equitable considerations counsel against an expansive interpretation of the statute. Gulf & Western drew up the contract, inserted the provision that makes Florida law govern and now invokes the statute as a defense to an otherwise valid agreement. Although we do not attribute any unconscionable conduct to Gulf & Western in inserting the clause as to the governing law, there is no necessity to allow that provision to act as a trap for Lucas, who never professed legal expertise or Florida registration.

---

**2.** Our holding that Florida's Real Estate License Law only reaches brokerage activity within the state itself is consistent with the interpretation given similar statutes in other states. *See, e.g., Paulson v. Shapiro*, 490 F.2d 1 (7th Cir. 1973) (Wisconsin); *Sun Sales Corp. v. Block Land, Inc.*, 456 F.2d 857 (3d Cir. 1972) (Pennsylva-

nia); *Richland Development Co. v. Staples*, 295 F.2d 122 (5th Cir. 1961) (Alabama).

**3.** At oral argument, counsel for defendant AMAX said that Lucas had not performed any services in Florida.

Our review of the Florida authorities convinces us that, as the record now stands, the statute does not bar plaintiff's suit. Accordingly, the summary judgment in favor of defendants will be vacated.

## II

Noranda Mines cross-appealed from the district court's order denying the motion to dismiss for lack of jurisdiction. In so doing, Noranda is raising an issue not strictly related to the merits of the summary judgment entered in its favor together with the other defendants.

■ Even without taking a cross-appeal, a prevailing party may present any argument for affirming his judgment, "whether it was ignored by the court below or flatly rejected." 9 MOORE'S FEDERAL PRACTICE § 204.11[3] (1980). *See also, Dandridge v. Williams*, 397 U.S. 471, 475 n.6, 90 S.Ct. 1153, 1156 n.6, 25 L.Ed.2d 491 (1970). As to Noranda, reversal of the district court's order finding jurisdiction might be viewed as an alternate ground for affirming the summary judgment against Lucas, since Noranda is out of the case in either event. But the summary judgment here is on the merits of the dispute between the parties and if affirmed would be *res judicata*. That would not be true of a ruling that service was improper, since that determination does not bar plaintiff from bringing suit in another jurisdiction. *See Peoria Ry. Co. v. United States*, 263 U.S. 528, 535–36, 44 S.Ct. 194, 196–97, 68 L.Ed. 427 (1924). Furthermore, reversal of the district court's order on jurisdiction would not affirm the entry of summary judgment, but vacate it. 9 Moore's Federal Practice § 204.11[3] (1980).

■ When a prevailing party is not free to raise a collateral matter in support of its judgment, a cross-appeal is necessary. Ordinarily, an order denying a petition to dismiss on jurisdictional grounds is not appealable, *see Boeing Co. v. International Union, UAW*, 370 F.2d 969, 970 (3d Cir. 1967), so were that issue standing alone, we would be required to dismiss this cross-appeal. However, we unquestionably have jurisdiction over the summary judgment matter, and we have noted that the requirement of a cross-appeal has been held to be a rule of practice rather than a limitation on appellate power. *Scott v. University of Delaware*, 601 F.2d 76, 82–84 (3d Cir. 1979). We believe, therefore, that in the exercise of sound judicial administration we should address the cross-appeal at this stage. *See Rhoads v. Ford Motor Co.*, 514 F.2d 931, 934 (3d Cir. 1975); 9 Moore's Federal Practice § 204.11[5] (1981).

Whether there is an adequate factual basis for valid service on Noranda Mines under the New Jersey long-arm statute is unclear and the record on this aspect of the case requires amplification. Documents presently on file suggest that defendant Noranda Mines, as well as Noranda Phosphate, participated in some discussions about the Florida deposits with Gulf & Western and with AMAX. There was one meeting in Connecticut and at least one meeting in New York and in Toronto.

The district judge believed Noranda Mines had been present in New Jersey through one or more subsidiaries. As mentioned earlier, Noranda Mines of Canada owns all of the stock of Noranda, Inc., which in turn owned all of the stock of Noranda Phosphate and Noranda Metal. These three corporations were chartered in Delaware and, although Noranda Metal did do business in New Jersey, none had its principal place of business in that state.

■ The burden of establishing the requisite jurisdictional facts rests on the plaintiff as the party alleging their existence. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). We do not believe there is sufficient evidence in the record before us to support the finding of jurisdiction over Noranda Mines. Although the district judge found that Lucas had discussed the Florida phosphate project with "an outfit called Noranda," he did not determine which of the several entities named Noranda it was that had these contacts with Lucas or where they took place.

Generally, "[a] foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing busi-

ness in the state." 2 Moore's Federal Practice § 4.25[6] (1981). Other factors which may have a bearing on the jurisdictional issue are whether the subsidiary corporation played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded. Because the relationships among Noranda Mines and its subsidiaries have not been clarified, it would not be profitable for us to discuss the legal ramifications at this stage.

Much of the difficulty in assessing the jurisdictional facts in this case arises from incomplete discovery. We find no indication that the district court intended to terminate discovery on jurisdiction or that plaintiff intended to rest on the data before the court at the time it denied Noranda's motion to dismiss. Since the case must be remanded in any event, we will vacate the order denying Noranda's motion so that the district court may conduct whatever proceedings it deems appropriate to expand the record and resolve the issue.

Accordingly, the judgment in favor of defendants will be vacated and the case will be remanded to the district court for further proceedings consistent with this opinion.