**DENTSPLY INTERNATIONAL INC., Plaintiff,**

v.

**PENTRON CORPORATION and Jeneric Industries, Inc., Defendants.**

Civ. A. No. 86–174–JLL.

United States District Court, D. Delaware.

Nov. 21, 1986.

---

Edward B. Maxwell, II, and William D. Johnston of Young, Conaway, Stargatt & Taylor, Wilmington, Del., and J. Patrick Clark of Dentsply Intern. Inc., York, Pa., of counsel, for plaintiff.

F.L. Peter Stone and Collins J. Seitz, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, Del., and Robert S. Cooper of Zeldes, Needle & Cooper, Bridgeport, Conn., of counsel, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

In this case, the plaintiff, Dentsply International Inc. ("Dentsply"), requests the Court to grant it injunctive and monetary relief against the defendants Pentron Corporation ("Pentron") and Jeneric Industries, Inc. ("Jeneric") (*see* Docket Item ["D.I."] 1), due to the defendants' failure to pay royalties specified in a patent sublicensing agreement executed between Dentsply and Pentron. (*See id.* at Ex. B.) On June 2, 1986, the defendants filed a motion to dismiss or transfer for lack of personal jurisdiction and proper venue. (D.I. 7.) At the oral argument on this motion, the defendants withdrew their alternative motion to transfer and their challenge to venue in this district. (D.I. 21 at 2.) Therefore, this opinion only addresses the question of whether this Court has personal jurisdiction over Pentron and Jeneric. For the reasons stated below, the defendants' motion to dismiss for lack of personal jurisdiction will be denied with respect to Pentron and judgment shall be reserved with respect to Jeneric until after an evidentiary hearing.

## BACKGROUND

Dentsply is a Delaware corporation with its principal place of business in York, Pennsylvania. Dentsply manufactures and sells dental supplies and equipment in the United States and foreign countries. (D.I. 1 at ¶ 1.) Part of Dentsply's manufacturing and sales is handled by its L.D. Caulk Division plant located in Milford, Delaware. Both Pentron and Jeneric are Connecticut corporations which have their principal place of business in Connecticut. Each corporation manufactures and sells dental products. (*Id.* at ¶¶ 2, 3.) Just over 77% of Pentron's stock is owned by Gordon S. Cohen. Gordon S. Cohen owns or controls through a series of trusts all of the Jeneric stock. Martin L. Schulman ("Schulman"), the President of Pentron, owns the remainder of the Pentron stock. (D.I. 18 [Pentron Corporation's Answers to Plaintiff's First Set of Interrogatories] at ¶ 3.)

The present dispute is centered around a patent Sublicensing Agreement (the "Sublicensing Agreement") between Dentsply and Pentron. (*See* D.I. 1 at Ex. B.) Several years before entering into the Sublicensing Agreement, Dentsply executed a Licensing Agreement with Ernst Muhlbauer, K.G. ("Muhlbauer"), a German national who is not a party to this action. (*See id.* at Ex. A.) Muhlbauer owns the patent on a dental material capsule. The agreement between Muhlbauer and Dentsply, entered into on November 26, 1979, granted Dentsply certain exclusive and nonexclusive rights to make or have made, use and sell the patented dental capsules. (*See id.* at ¶ 9.)

The Sublicensing Agreement between Dentsply and Pentron was entered into on July 1, 1983. According to the affidavit of Joseph Swain, Director of Manufacturing of the L.D. Caulk Division of Dentsply ("Caulk"), Pentron had been purchasing Caulk manufactured dental material capsules for at least two years prior to the agreement between Dentsply and Pentron. (D.I. 22 [Plaintiff's Answering Brief in Op-

position to Defendants' Motion to Dismiss or Transfer] at Ex. A.) Again, according to affidavits filed by Dentsply, John F. Boyle ("Boyle"), then Vice President of Sales for Pentron, contacted Donald A. LeRoy ("LeRoy"), then Vice President and General Manager of the L.D. Caulk Division of Dentsply, in late 1982 to express interest in obtaining a sublicense so Pentron could manufacture the patented dental material capsules. (*Id.* at Ex. B, ¶ 6 and Ex. D, ¶ 4.) Boyle met at least once with LeRoy at the Caulk facility in Milford, Delaware, for the purpose of negotiating an agreement and called LeRoy in Delaware on several occasions to further the negotiations. (*Id.* at Ex. B, ¶ 7 and Ex. D, ¶¶ 5–6.) At the conclusion of the negotiations, Boyle signed the Sublicensing Agreement on behalf of Pentron and mailed the Agreement to LeRoy in Delaware where he signed on behalf of Dentsply and obtained Muhlbauer's consent to the sublicense. (*Id.* at Ex. B, ¶ 9 and Ex. D, ¶ 7.) The defendants have yet to dispute any of these particular facts set forth by Dentsply.

The Sublicensing Agreement granted Pentron a nonexclusive license to make, have made, use and sell the patented dental material capsules. (D.I. 1 at ¶ 10.) The Sublicensing Agreement provides that Pentron pay a royalty to Dentsply of $0.02 for each patented capsule sold with a minimum of $20,000 in royalties to be paid each year. Additionally, Pentron is required to pay two one-hundredths of a deutsche mark (0.02 DM) for each capsule sold. (*Id.* at Ex. B, ¶ 3.) This additional amount equals the royalty Dentsply must pay to Muhlbauer pursuant to the original licensing agreement.

Dentsply, in its complaint, alleges that Pentron and Jeneric combined have sold over 2.5 million capsules covered by the Sublicensing Agreement without ever paying any royalties. (*Id.* at ¶ 12.) The defendants do not agree that they have sold this many capsules. Instead, Jeneric states in its answers to Dentsply's first set of interrogatories that it has manufactured and sold approximately 1,306,971 dental material capsules and that approximately 1,170,276 of these capsules were sold to Pentron. (D.I. 21 at ¶ 5.) Pentron claims that it has not manufactured any patented dental material capsules, but confirms the purchase of 1,170,276 capsules from Jeneric. (D.I. 18 at ¶¶ 5, 6.) Assuming for the sake of illustration that the defendants' figures are correct, Jeneric's sale of 1,170,276 capsules to Pentron was a permitted act under the terms of the Sublicensing Agreement which allows Pentron to have capsules made for it. Therefore, Dentsply's claims against Jeneric can only apply to capsules that Jeneric manufactured which were not sold to or through Pentron.[1]

## ANALYSIS

Both Pentron and Jeneric contend that this Court does not have personal jurisdiction over them and that even if this Court does have personal jurisdiction over them, assertion of such jurisdiction would violate the due process clause of the United States Constitution. Dentsply has the burden of proving that this Court can properly assert jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1934); *Simpson v. Thiele*, 344 F.Supp. 7 (D.Del.1972). Dentsply has vigorously posited in its brief and at oral argument that the Delaware long-arm statute, 10 *Del.C.* § 3104(c)(1), provides the Court with personal jurisdiction over Pentron and Jeneric and that the due process clause will not be violated by exercising such jurisdiction. To properly resolve this motion, the Court must first determine whether the Delaware long-arm statute gives this Court jurisdiction over each of these defendants and if the Court does have jurisdiction, the Court must proceed to determine whether exercising its jurisdiction will violate the due process rights of either defendant. *LaNuova D & B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del.Supr.1986).

---

1. The Court notes that even if Dentsply cannot recover from Jeneric on the basis of the Sublicensing Agreement for any capsules not sold to or through Pentron, Dentsply and/or Muhlbauer may have the basis for a patent infringement suit against Jeneric.

## A. Jurisdiction Over Pentron

Dentsply contends that Pentron had sufficient contacts with the L.D. Caulk Division of Dentsply, located in Milford, Delaware, to subject Pentron to personal jurisdiction in Delaware under 10 *Del.C.* § 3104(c)(1). This subsection, part of Delaware's long-arm statute, states:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State.

Section 3104(c) has been liberally construed to confer jurisdiction to the greatest extent allowable under the due process clause. *Speakman Co. v. Harper Buffing Machine Co.*, 583 F.Supp. 273 (D.Del.1984); *Moore v. Little Giant Industries, Inc.*, 513 F.Supp. 1043, 1048 (D.Del.1981), *aff'd,* 681 F.2d 807 (3d Cir.1982); *Waters v. Deutz Corp.*, 460 A.2d 1332, 1334–35 (Del.Super. 1983). The Delaware Supreme Court explained in *LaNuova* that "[t]he conduct embraced in [§ 3104(c)(1)] ... may supply the jurisdictional basis for suit only with respect to claims which have a nexus to the designated conduct." *Id.* at 708. The court went on to state, "[w]here personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction. *Id.* (citing *Speakman,* 583 F.Supp. at 275; *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.,* 505 F.Supp. 777, 780 (D.Del.1980)).

When the established interpretation of § 3104(c)(1) is applied to the facts of this case, this Court can conclude quickly that jurisdiction over Pentron is proper. Pentron has not disputed that John F. Boyle, Vice President of Sales for Pentron, visited the L.D. Caulk Division facility in Milford and called Dentsply employees at L.D. Caulk on several occasions for the purpose of negotiating the Sublicense Agreement. Boyle's conduct and contacts with Delaware have a strong nexus with the action brought by Dentsply. Therefore, the contacts which led up to the single transaction of entering into the Sublicensing Agreement are sufficient to establish the Court's jurisdiction over Pentron in an action arising directly out of the Sublicensing Agreement.

The defendants contend in their opening brief that jurisdiction cannot be had over Pentron, because Pentron has not sold any patented capsules in Delaware. This fact is irrelevant to the determination that this Court has jurisdiction over Pentron for the purpose of adjudicating a dispute between Dentsply and Pentron arising from an agreement negotiated and executed in part in Delaware. To reiterate, this Court has jurisdiction over Pentron not on the basis of general contacts with Delaware, but due to specific contacts closely associated with Dentsply's action.

## B. Pentron's Due Process Rights

Although this Court has personal jurisdiction over Pentron, the Court must look to the United States Supreme Court's directives in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny to determine whether Pentron's due process rights would be violated by the exercise of such jurisdiction. The Supreme Court has indicated that a defendant's contacts with a forum state must be such that the maintenance of the suit in that forum "does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). The Court expanded on this directive in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Court said that in addition to the burden on the defendant from defending a suit in a particular forum, other factors to be considered include the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate ju-

dicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies. *Id.* at 292, 100 S.Ct. at 564 (citations omitted). This Court should also factor in whether Pentron availed itself of the privileges and benefits of Delaware law and whether Pentron's connections with Delaware are such that it should reasonably have anticipated being hailed into a Delaware court. *Id.* at 295, 297, 100 S.Ct. at 566, 567; *see also Waters v. Deutz Corp.,* 460 A.2d 1332 (Del.Super.1983).

■ On the basis of undisputed facts in the record of this action, the Court concludes that Pentron's due process rights will not be violated by the exercise of the Court's personal jurisdiction over Pentron. The Sublicense Agreement was not only negotiated in Delaware or with someone in Delaware, but the Agreement was to "be deemed to have been made and entered pursuant to ... the laws of the State of Delaware." (D.I. 1 at Ex. B, ¶ 18.) Therefore, Pentron availed itself of the benefits of Delaware law to effectuate a binding contract. Additionally, the State of Delaware has an interest in adjudicating disputes involving the enforcement or interpretation of a contract based on Delaware law, particularly when one of the parties, such as Dentsply through its L.D. Caulk Division, is located in Delaware. Furthermore, judicial efficiency will not be served by causing a Connecticut court to duplicate the prior efforts of this Court. Finally, given the contacts Boyle had on behalf of Pentron in the State of Delaware, prior to signing a contract made pursuant to Delaware law, the Court concludes that Pentron could have reasonably anticipated being hailed into a Delaware court in the event that it breached its contract with Dentsply.

## C.  Jurisdiction Over Jeneric

Determining whether this Court has jurisdiction over Jeneric is complicated by the fact that Jeneric was not a party to the Sublicensing Agreement.  Denstply advanced in its brief and at oral argument two explanations of why this Court has personal jurisdiction over Jeneric.

First, Dentsply cites a recent decision of this Court, *Padovani v. Spectacon Inc.,* No. 84–605–JJF, Farnan, J. (D.Del. March 25, 1986), for the proposition that a foreign corporation can be subjected to the jurisdiction of Delaware courts under § 3104 through the actions of a related corporation which need not be a subsidiary or affiliate of the foreign corporation. Dentsply claims that a portion of Boyle's affidavit clearly indicates that Pentron was acting on behalf and at the instruction of Jeneric. In his affidavit, Boyle claimed that Schulman, Executive Vice President of Jeneric and President of Pentron, instructed him to solicit and negotiate the Sublicense Agreement so Jeneric could manufcture the capsules and both Jeneric and Pentron could market the capsules. (D.I. 22 at Ex. B, ¶ 5.) Boyle also made the statement in his affidavit that Schulman had approved the final agreement. (*Id.* at ¶ 8.) Dentsply asserts that these alleged actions are sufficient to make Pentron and Jeneric related corporations for the purpose of establishing jurisdiction over Jeneric.

In the alternative, Dentsply argues that Jeneric is subject to the jurisdiction of this Court, because it is the "alter ego" of Pentron. *See O'Neal v. Hurley Development Corp.,* 558 F.Supp. 462 (D.Del.1983) (Court used three-pronged test to determine whether one corporation is subject to personal jurisdiction as the instrumentality or alter ego of another corporation.) Again, Dentsply relies primarily on Boyle's affidavit in which he claimed that Pentron and Jeneric were so interrelated that their operations were coordinated by the management of both companies. (D.I. 22 at Ex. B, ¶ 3.)

The law in Delaware and the Third Circuit is very clear that having jurisdiction over a subsidiary does not necessarily give a court jurisdiction over the parent company. *Lucas v. Gulf & Western Industries, Inc.,* 666 F.2d 800, 805–06 (3d Cir.1981);

*Waters v. Deutz Corp.,* 460 A.2d 1332, 1337 (Del.Super.1983). As explained by the *Lucas* court, "[o]ther factors [besides ownership] which may have a bearing on the jurisdictional issue are whether the subsidiary corporation played a part in the transaction at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded." *Id.* at 806.

The determination of whether Pentron is the agent, adjunct or instrumentality of Jeneric is a question of fact. *Eastern Industries v. Traffic Controls,* 142 F.Supp. 381, 384 (D.Del.1956). Given the factors set forth in *Lucas,* this Court could use either or both of the arguments made by Dentsply to make the determination that Jeneric is subject to personal jurisdiction in Delaware in this action, so long as the Court accepts as true the facts set forth by Dentsply. This cannot be done without considering the Schulman affidavit filed with defendants' reply brief. (D.I. 24 at Ex. A.) In his affidavit, Schulman claims that he did not approve the Sublicensing Agreement, that Jeneric and Pentron are operated separately, and that any transactions between them are conducted in a businesslike, arm's-length fashion. (*Id.* at ¶¶ 4–6.)

Given the direct contradictions between affidavits filed by the plaintiff and defendants in this case, this Court will reserve its decision on the question of personal jurisdiction over Jeneric pending an evidentiary hearing. The evidentiary hearing will provide the Court with additional facts relating to the interrelationship between Pentron and Jeneric.

## CONCLUSION

For the reasons stated above, the Court holds that it has personal jurisdiction over defendant Pentron and that the exercise of this jurisdiction will not infringe on Pentron's due process rights. The Court reserves decision pending an evidentiary hearing on the issue of personal jurisdiction over Jeneric. Therefore, defendants'

motion to dismiss for lack of jurisdiction is denied with respect to Pentron.

An order will be entered in accordance with this Memorandum Opinion.