Daniel E. Fitzpatrick, J.
This is a motion by the defendant S ocíete Anonyme des Automobiles Peugeot, hereinafter referred to as “ S. A. P.”, to dismiss the action as to it upon the ground that the court lacks jurisdiction over its person.
S. A. P. is a French national which manufactures and sells, in France, Peugeot automobiles. The codefendant, Peugeot, Inc., a New York corporation with its principal place of business in Queens County, is a wholly owned subsidiary of S. A. P. Peugeot, Inc., is the American distributor for Peugeot automobiles. It customarily purchases new Peugeots in France from ig. A. P., imports them into the United States and distributes them to authorized Peugeot dealers throughout this country.
On November 25, 1962 a Peugeot sedan owned by plaintiff Auguste Rietsch, driven by his son, the plaintiff Peter Rietsch, *276 and occupied as a passenger by the decedent, Alfred Batnoff, ran out of control and turned over on Boute 17 near Ferndale, New York. As a result, Alfred Batnoff was killed, Peter Bietsch allegedly sustained personal injuries, and Auguste Bietsch suffered the loss of Peter’s services and property damage to the car.
It is alleged that the accident was caused by the breaking of the vehicle’s front wheel suspension and its appurtenant parts.
The complaint sounds in negligence and breach of warranty. The defendants allegedly were negligent in the design, manufacture, assembly, inspection, testing and distribution of the vehicle which they knew or should have known was an inherently dangerous and defective instrumentality.
The particular automobile involved in this accident was manufactured by S. A. P. and sold by it in France to Peugeot, Inc., in the latter part of 1961. Together with 19 other automobiles so manufactured and sold it was shipped from Le Havre and resold to Dolphin Motors, Inc., a distributor for Peugeot, Inc. On January 31, 1962 Peugeot, Inc., repurchased this particular vehicle from Dolphin Motors, Inc., for. use as a company car. It was assigned to the resident manager of Peugeot, Inc., one Eugene Daneri, for his exclusive use, which use continued for approximately eight months. On August 27, 1962 the automobile was resold to the plaintiff Auguste Bietsch “as is and shown ”, at which time it had been driven approximately 14,000 miles.
The moving defendant contends that it is not subject to the jurisdiction of this court since (1) it was not “ doing business ” in New York so as to be subject to jurisdiction prior to the enactment of the CPLB; (2) it does not transact any business within the State of New York (CPLB 302, subd. [a], par. 1); (3) it has not committed a tortious act within New York State (CPLB 302, subd. [a], par. 2) and (4) it does not use or possess any real property situated within this State (CPLB 302, subd. [a], par. 3).
S. A. P. raises no issue with respect to the manner of the actual service of the summons upon it.
While the operative facts in the instant case do not appear dissimilar to those in the case of Taca Int. Airlines v. Rolls-Royce of England (21 A D 2d 73), where the defendant, an English corporation owning all the stock of a Canadian corporation which, in turn, owned all of the stock of Rolls-Royce, Inc., a Delaware corporation doing business in New York, was itself held to be doing business within this State within the purview of CPLB 302 (subd. [a], par. 1), the plaintiffs do not *277 claim jurisdiction based upon that subdivision. Nor do they claim jurisdiction based upon CPLR 302 (subd. [a], par. 3).
Plaintiffs claim jurisdiction solely under CPLR 302 (subd. [a], par. 2) based on their contention that S. A. P., by so negligently designing, manufacturing, assembling, inspecting, testing and distributing the automobile that it caused the accident complained of, committed a tortious act within this State.
Initially it should be noted that CPLR 302 is a remedial statute and, accordingly, applies to actions commenced after its effective date for redress of wrongs already done. (Simonson v. International Bank, 14 N Y 2d 281, 289.) Moreover, alleged negligence in the manufacture of a dangerous article cannot be separated from the resulting injury. Accordingly, a tortious act occurs where the last event necessary to make the actor liable takes place. (Lewin v. Bock Laundry Mach. Co., 42 Misc 2d 599, affd. 22 A D 2d 854; Feathers v. McLucas, 21 A D 2d 558; Johnson v. Equitable Life Assur. Soc. of U. S., 22 A D 2d 138 [1st Dept.].)
It is clear that if the plaintiffs’ allegations are true the automobile was an inherently dangerous instrumentality. (MacPherson v. Buick Motor Co., 217 N. Y. 382.) It is also clear that the last event or the consequence of the moving defendant’s alleged wrongful act occurred within the State of New York.
The only question remaining is whether under the particular facts and circumstances here present the requirements of Federal due process have been met, that is, whether the maintenance of the suit in this forum offends the “ traditional notions of fair play and substantial justice ’ ’ and makes it reasonable 1 ‘ to require the corporation to defend the particular suit which is brought ” here. (Feathers v. McLucas, supra, p. 559.)
In this court’s opinion these requirements have been met. The moving defendant has been producing automobiles for a considerable number of years. Prior to 1957 it imported automobiles into this State and sold them here. Admittedly it caused the incorporation of the codefendant, Peugeot, Inc., for the primary purpose of immunizing itself .from New York lawsuits. Implicit in this act was the contemplation that, through Peugeot, Inc., Peugeot automobiles would be sold in the United States. When S. A. P. sold the automobile involved herein to Peugeot, Inc., it knew or reasonably should have known that this car would be used in New York State. As a matter of fact in the year 1962 alone there were 521 new registrations of Peugeot automobiles in this State, the majority of which was imported by Peugeot, Inc. It is evident that at a price of close to $2,000 per automobile S. A. P., directly or indirectly, realized substan *278 tial revenues from sales of Peugeots in this State. This is true notwithstanding the fact that 521 vehicles constituted a small proportion of S. A. P.’s total production in 1962. It is obvious that the use of Mr. Rietsch’s Peugeot in New York State was not an isolated instance not reasonably to be foreseen when the car was manufactured.
In view of the size and capabilities of ,S. A. P., the inconvenience and expense of a trial in New York would not seem to place an undue burden on it or on commerce.
The parties conceded on the oral argument that there was no question of any French-American treaty bearing on the issues involved in this motion. The motion is denied.