Noland WATERS and Elsie R. Waters, Plaintiffs,

v.

DEUTZ CORPORATION, a corporation of the State of Florida, and Klockner-Humboldt-Deutz AG, a foreign corporation, Defendants.

Superior Court of Delaware, New Castle County.

Submitted: April 11, 1983.

Decided: May 12, 1983.

Alan T. Boyd and Neal J. Levitsky, Bayard, Brill & Handelman, P.A., Wilmington, for plaintiffs.

Edmund N. Carpenter, II, and L. Susan Faw, Richards, Layton & Finger, Wilmington, for defendant Klockner-Humboldt-Deutz AG.

F. Alton Tybout, Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant Deutz Corp.

O'HARA, Judge.

Plaintiff, Noland Waters, was injured on May 17, 1981, while employed as a longshoreman at the Port of Wilmington when a tractor that he was unloading tipped over and pinned him beneath. He initiated an action against the German manufacturer of the tractor, Klockner-Humboldt-Deutz AG ("KHD"), as well as the Florida corporation which is the exclusive distributor of this product in the United States, Deutz Corporation ("Deutz"), alleging negligent manufacture and design, breach of warranty, and strict liability in tort. On defendant KHD's motion to dismiss, the issue confronting this Court is whether it may exercise *in personam* jurisdiction over a German corporation pursuant to the Delaware long-arm statute.

10 *Del.C.* § 3104, the statute authorizing personal jurisdiction over non-domiciliaries, provides in relevant part:

(c) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

\* \* \* \* \* \*

(j) When jurisdiction over a person is based solely upon this section, only a cause of action arising from any act enumerated in this section may be asserted against him.

Plaintiffs suggest that *in personam* jurisdiction over KHD can be sustained under subsections (1), (2) or (4) of § 3104(c). KHD counters that its contacts with this forum are, at best, indirect and are far too tenuous to place it within the purview of the statute or comport with the constitutional notions of due process and fundamental fairness which must accompany any jurisdictional inquiry.

The record presently before the Court indicates that the tractor in question was manufactured by KHD in Germany, where title was transferred on April 27, 1981 to co-defendant Deutz, a wholly owned subsidiary of KHD. From there, the tractors were shipped to this country and arrived at the Port of Wilmington on May 16, 1981. As KHD's exclusive distributor, Deutz is the sole conduit through which the German corporation's tractors enter the United States; it is uncontroverted that Deutz has imported approximately 40 percent of these products via the Port of Wilmington. Wilmington's port was designated for receipt of these shipments due to its prime location for distribution to the northeastern and midwestern parts of the United States.

Additionally, the port was deemed a favorable arrival site because of the presence there of Volkswagen roll-on/roll-off ships.

In attempting to divest this Court of personal jurisdiction thereover, KHD offers the following factual assertions: KHD has neither advertised nor solicited business in this forum; it maintains no employees, agents, offices or showrooms in the State, nor has it established a Delaware bank or credit account; KHD further denies having derived substantial revenue from the sale of its product in this State.

However, although the aforementioned contacts may not exist directly between KHD and this forum, many of them do characterize the relationship of Deutz to this State. Specifically, Deutz has solicited business in Delaware over the last five years, having sold a total of five tractors during that period. The subsidiary has called upon Delaware farm equipment dealers and sells its tractors directly to a local retailer, Draper Equipment. As the sole distributor of tractors manufactured by KHD, the wholly owned subsidiary also retained a district manager to perform services in the State, who verifies floor plan inventory, assists in training functions and assists dealers at the sales level. In addition, the wholly owned subsidiary has engaged in an advertising program to promote the sale of tractors manufactured by KHD, a campaign which has extended to this State. In particular, Deutz has used the Delta & Southeast Farm Press, Farm Industry News, Pennsylvania Farmer and Progressive Farmer as advertising mediums for the sale of Deutz farm tractors and parts in Delaware for the past five years.

Thus, the issue before this Court reduces itself to whether or not the activities of a wholly owned subsidiary in this forum render the parent corporation amenable to the jurisdiction of this Court under 10 *Del.C.* § 3104 and consistent with the tenor of Fourteenth Amendment due process.

Yet to be construed by the Delaware Supreme Court, 10 *Del.C.* § 3104(c)(1) authorizes service of process on a foreign corporation which "[t]ransacts any business ... in the State." Derived from the Illinois Long Arm Statute, the Delaware statute may be similarly construed by recourse to the legislative and decisional law of Illinois. *Wilmington Supply Co. v. Worth Plumbing & Heating,* D.Del., 505 F.Supp. 777 (1980).[1] This aid in interpretation of § 3104 evolves from the presumption, well-established in Delaware, that when our Legislature adopts a statute directly modeled upon that of a foreign state, the Legislature likewise intended to adopt the judicial construction accorded the statute by the courts of the foreign state. *Stauffer v. Standard Brands Incorporated,* Del.Ch., 178 A.2d 311 (1962), aff'd Del.Supr., 187 A.2d 78 (1962); *Opinion of the Justices,* Del.Supr., 181 A.2d 215 (1962).

The Illinois Legislature, in enacting its long-arm statute, has manifested the intent that the expansive concept of "transacting business" be afforded the maximum extraterritorial jurisdiction permitted by the Constitution. *Nelson v. Miller,* Ill.Supr., 11 Ill.2d 378, 143 N.E.2d 673 (1957); *Koplin v. Thomas, Haab & Botts,* Ill.App., 73 Ill. App.2d 242, 219 N.E.2d 646 (1966); *Colony Press, Inc. v. Fleeman,* Ill.App., 17 Ill. App.3d 14, 308 N.E.2d 78 (1974); *Cook Associates, Inc. v. Colonial Broach & Mach. Co.,* Ill.App., 14 Ill.App.3d 965, 304 N.E.2d 27 (1973). In that vein, the constitutional considerations do not posit a distinct inquiry but are also a factor in determining the

---

1. Specifically, the Delaware Supreme Court has acknowledged that the language of § 3104 had its inception in § 1.03 of the Uniform Interstate and International Procedure Act, a "single act statute." *Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175 (1980). The phrase "transacting any business" which appears in 13 Uniform Laws Annotated § 1.03 had its genesis in the Illinois Act. Ill.Stat.Ann. c. 110 § 17(1)(a). As stated in the Commissioner's Comments:

This provision should be given the same expansive interpretation that was intended by the draftsman of the Illinois Act and has been given by the courts of that state. See, e.g., *Berlemann v. Superior Distributing Company,* 17 Ill.App.2d 522, 151 N.E.2d 116 (1958 13 ULA p. 467 (1980 ed.).

breadth of the statute. *Buckeye Boiler Co. v. Sup.Ct. of Los Angeles County,* Cal.Supr., 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1969); *Lamprecht v. Piper Aircraft Corporation,* Md.App., 262 Md. 126, 277 A.2d 272 (1971).

Initially, however, this Court must determine whether the marketing arrangement existing herein between parent (KHD) and subsidiary (Deutz), in fact, constitutes "transacting business" on the part of the parent under § 3104. Although this issue is one of first impression, the courts have considered and commented upon similar issues presented under 8 *Del.C.* § 382,[2] the long-arm provision of the corporate code. As with § 3104, precedent uniformly dictates a liberal construction of § 382 favoring the exercise of jurisdiction.[3]

In *Gentry v. Wilmington Trust Company,* D.Del., 321 F.Supp. 1379 (1970), the Court confronted the question of whether the activities of a manufacturer's representative subjected the manufacturer to suit in the states where the representative solicits. The *Gentry* Court acknowledged that the jurisdictions were split between a liberal and restrictive approach,[4] but determined that the Delaware statute indicated an intent to adopt a liberal interpretation of "doing business." Under this interpretation, the Court found relevant the following inquiry:

The more liberal standard ... is satisfied if the representative is performing services beyond "mere solicitation", and if the services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, its own officials would perform substantially similar ones.[5]

Adopting this analysis, the Court notes that the services Deutz performs for its parent KHD in the marketing of its product are all inclusive. As the exclusive distributor of KHD tractors in the United States, Deutz solicits business in this forum, handles all advertising, supplies local retailers, and has established a district manager to perform services in Delaware. This arrangement accords with the pivotal observation in *Gentry* that "[the manufacturer's] products could not find their way to Delaware customers without [the representative]."

In *Perry v. American Motors Corporation,* Del.Super., 353 A.2d 589 (1976), this Court considered the dilemma of a wholly owned subsidiary purportedly insulating the parent from service of process through discharge of certain of its commercial activities. The parent therein, American Motor Corporation ("AMC"), was a foreign corporation with no offices, factories, assembly plants, storage facilities or terminals in Del-

---

**2.** 8 *Del.C.* § 382 provides in pertinent part: Service of process on nonqualifying foreign corporations.

(a) Any foreign corporation which shall *transact business* in this State without having qualified to do business ... shall be deemed to have thereby appointed and constituted the Secretary of State of this State, its agent for the acceptance of legal process in any civil action, suit or proceeding against it in any state or federal court in this State *arising or growing out of any business transacted by it within this State....* (Emphasis added).

\* \* \* \* \* \*

(b) ... *"[T]he transaction of business"* or *"business transacted in this State,"* by such foreign corporation, whenever those words are used in this section, *shall mean the course or practice of carrying on any business activities in this State* ... (Emphasis added).

**3.** See *County Plumbing & Heating Company v. Strine,* Del.Super., 272 A.2d 340 (1970); *Crowell Corporation v. Topkis Construction Co.,* Del.Super., 267 A.2d 613 (1970); *Delaware Lead Const. Co. v. Young Industries, Inc.,* D.Del., 360 F.Supp. 1244 (1973).

**4.** Of the restrictive approach, the Court observed:

The more restrictive standard looks only to the presence or absence of the foreign corporation in the State and at the possibility of finding an agency relationship with the representative. Finding the corporation absent in all physical aspects and the representative an independent contractor, it leaves the corporation immune.

**5.** Cf. *Nugey v. Paul-Lewis Laboratories,* S.D. N.Y., 132 F.Supp. 448 (1955); *Gelfand v. Tanner Motor Tours, Ltd.,* 2nd Cir., 385 F.2d 116 (1967).

aware. AMC had no salesmen nor agents present in the forum, nor was there any pattern of visitation by the aforementioned in this State. As in the case *sub judice,* all marketing activities were performed by a wholly owned subsidiary, American Motors Sales Corporation ("AMSC"), which existed exclusively for this purpose.[6]

In evaluating the jurisdictional question, the *Perry* Court noted that the resolution of the issue in other states evidenced a split between a conservative and liberal approach to long-arm jurisdiction,[7] an observation also present in *Gentry v. Wilmington Trust Company,* supra. The *Perry* Court found illuminating the policy articulated in *Crucible, Inc. v. Stora Kopparbergs Bergslags AB,* W.D.Pa., 403 F.Supp. 9 (1975) in upholding jurisdiction that:

> [a]ny other result would permit a foreign corporation to market its products in this state, profit from their sale here, and yet retain immunity from suit in the Pennsylvania courts simply by structuring its business operation in such a way as to avoid direct activity in the Commonwealth.

**6.** Specifically, AMSC purchased AMC automobiles outside the State and resold them to local dealerships franchised by AMSC.

**7.** Cf. *Regie Nationale Des Usines Renault v. Superior Court,* Cal.App., 208 Cal.App.2d 702, 25 Cal.Rptr. 530 (1962) (holding that a parent corporation cannot so design its marketing efforts to arrange for "independent" agents to avoid the jurisdictional effect of its deliberate contacts with the purchasing public); *Velandra v. Regie Nationale Des Usines Renault,* 6th Cir., 336 F.2d 292 (1964) (rejecting the theory that the mere ownership of a wholly owned subsidiary is alone sufficient to justify jurisdiction over the parent).

The *Velandra* decision relied on the early case of *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), wherein the Supreme Court held that the activities of a subsidiary did not subject its parent corporation to the personal jurisdiction of local courts. The *Cannon* ruling was subsequently qualified in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and later cases have further diluted the *Cannon* holding. Specifically, some decisions holding foreign corporations amenable to the personal jurisdiction of the local courts based upon the local activities of their

The Court was particularly persuaded by the approach demonstrated in *Honeywell, Inc. v. Metz Apparatewerke,* 7th Cir., 509 F.2d 1137 (1975):

> We look to the economic and commercial realities of this case, and in our view, it is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products.

The *Perry* Court thus concluded that "a strong policy argument may be fashioned . . . to permit service upon a wholly owned subsidiary . . . as constituting service upon the parent," but declined to rule solely on this basis due to the existence of certain admitted contacts between the parent and this forum.[8]

With respect to KHD's contention that it cannot be said to be doing business in Delaware solely on the ground that its subsidiary Deutz is selling KHD products here, that argument was addressed in *Crucible, Inc. v. Stora Kopparbergs Bergslags AB,*

subsidiaries have done so on the theory that the corporate separation is fictitious, *Intermountain Ford Tractor Co. v. Massey-Ferguson LTD.,* C.D.Utah, 210 F.Supp. 930 (1962), or that the present has held the subsidiary out as its agent, *Curtis Publishing Company v. Cassel,* 10th Cir., 302 F.2d 132 (1962), or that the parent has exercised an undue degree or control over the subsidiary. *Focht v. Southwestern Skyways, Inc.,* D.Colo., 220 F.Supp. 441 (1963). However, as noted by the Court in *Velandra* "the law relating to the fictions of agency and separate corporate entity was developed for purposes other than determining amenability to jurisdiction, and the law of such amenability is merely confused by reference to these inapposite matters."

**8.** Specifically, the Court cited three contacts which rendered AMC amenable to jurisdiction, the first being the existence and function of its subsidiary AMSC in Delaware, which is germane to the inquiry herein. However, as further support for sustaining jurisdiction, the Court pointed to the substantial solicitation of sales through advertising in Delaware and also the direct link provided by the Buyer Protection Plan warranty between AMC and the consumer.

supra. The Court therein, in dicta, announced:

[E]ven if defendant's contacts with this state were restricted to its subsidiary's activities here ... I do not read *Cannon Mfg. Co.* and its progeny to preclude a determination that Stora-Sweden [the parent] has done business in Pennsylvania. While the view expressed in the *Cannon Mfg. Co.* line of cases constitutes a viable tenet of corporate law, that view would not appear to be required as a matter of federal due process, and there would seem to be no constitutional impediment to a long-arm statute authorizing jurisdiction over a parent corporation on the basis of its subsidiary's activities in the state.[9]

Similarly, the activities of a self-employed manufacturer's representative formed the basis of long-arm jurisdiction over a foreign corporation under the "doing business" provision of California's statute. In *Cosper v. Smith & Wesson Arms Co.,* Cal.Supr., 53 Cal.2d 77, 346 P.2d 409 (1959), Smith & Wesson was a foreign corporation with no agents, employees or salesmen in California, nor did it maintain any offices, property or assets in that forum. Moreover, Smith & Wesson did not solicit retail business in California but distributed its products F.O.B. Springfield, Massachusetts through regular and wholesale dealer channels. Nonetheless, on the basis of an arrangement for the distribution and sale of its products by an independent representative, Smith & Wesson was found amenable to jurisdiction in California. Employing an analysis similar to that in *Gentry v. Wilmington Trust Company,* supra, the *Cosper* Court concluded in describing the independent marketing representative's role:

These services may reasonably be said to have given Smith & Wesson "in a practical sense, and to a substantial degree, the

benefits and advantages it would have enjoyed by operating through its own office or paid sales force."

Having examined all of the aforementioned precedents, this Court acknowledges the general rule that ownership alone of a subsidiary is not sufficient to justify jurisdiction over the parent. However, notwithstanding this principle, decisions from the Delaware District Court and other jurisdictions suggest that jurisdiction may be obtained over a manufacturer on the basis of services performed by its distributor, subsidiary or other marketing agent under the concept of "doing business" as it appears in the long-arm statute.

In light of the expansive interpretation to be afforded § 3104 under Illinois decisional law interpreting the long-arm statute from which our own evolved and the commercial actualities inherent in the marketing relationship between KHD and Deutz, this Court finds persuasive the following observation:

Regie [the parent] might choose to arrange its marketing process through a hierarcy of its own agents and employees. Then, by establishing agents in California to sell its products, it would undoubtedly be amenable to suit in this state. For reasons of its own it chooses to market its products through a wholly-owned American subsidiary and a network of independently-owned distributorships and dealerships. These choices on its part effect little, if any, alteration in the jurisdictional situation. The "contacts" exist one way or the other and for precisely the same purpose. The differences are differences only in form and description. *Regie Nationale Des Usines Renault v. Superior Court,* supra.

Accordingly, this Court holds that 10 *Del.C.* § 3104 authorizes jurisdiction over a foreign manufacturer (KHD) based on the

---

**9.** However, the Pennsylvania Long Arm Statute provides expressly for what the plaintiffs herein would have this Court imply in the Delaware statute, 10 *Del.C.* § 3104. Specifically, 42 Pa. C.S.A. § 8309(a)(3) states:

Acts affecting jurisdiction

(a) General Rule—Any of the following shall constitute "doing business" for purposes of this chapter:

\* \* \* \* \* \*

(3) The shipping of merchandise directly or *indirectly into or through* this Commonwealth. (Emphasis added).

commercial marketing activities of its subsidiary (Deutz) in this forum.

Having ruled that § 3104(c)(1) affords a basis for jurisdiction over KHD, it remains for this Court to determine whether the exercise thereof comports with due process. The pivotal inquiry articulated in *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) is whether the defendant has sufficient minimal contacts with the forum that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* quoting from *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

The United States Supreme Court's recent analysis of *International Shoe* and its progeny in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980) provides particular guidance in evaluating the minimum contacts of KHD herein. In *World-Wide Volkswagen,* Oklahoma claimed jurisdiction over a New York automobile retailer in a case where the sole contact alleged was that a car that defendant had sold to New York residents in New York was involved in an accident while passing through the forum en route to Arizona. The defendant retailer did not do business in Oklahoma, had no office nor agents there, did no advertising there and had not shipped any cars there.

In examining those relevant factors which form the due process component of jurisdiction, the United States Supreme Court cited the state's interest in adjudicating the dispute;[10] the plaintiff's interest in securing convenient and effective relief, insofar as that interest is not adequately protected by the plaintiff's power to choose the forum;[11] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.[12]

Applying the facts of the case *sub judice* to the aforementioned considerations, this Court finds that Delaware has a compelling interest in adjudicating the dispute, considering the significant role of the Port of Wilmington in effectuating the distribution of 40 percent of KHD's product marketed in the United States. As for plaintiffs, it is not evident to this Court that they have any other avenue of redress against KHD in the United States if Delaware declines to exercise jurisdiction; to that extent plaintiffs' power in selecting a forum is minimal. Moreover, resort to litigation in West Germany renders the relief sought anything but convenient. Resort to a West German Court would, likewise, undermine the interstate judicial system's interest in obtaining the most effective resolution of controversies.

Perhaps the paramount interest presented by the facts under consideration herein is that of the several states in advancing substantive policy in the area of products liability. The courts are viewing with growing suspicion foreign manufacturers whose marketing strategies are calculated to insulate them from liability for product defects to the consumers who ultimately subsidize the enterprise. As one Court observed:

A manufacturer whose products pass through the hands of one or more middlemen before reaching their ultimate users cannot disclaim responsibility for the total distribution pattern of the products. If the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state. *Buckeye Boiler Co. v. Sup.Ct. of Los Angeles County,* supra.[13]

---

10. Cf. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

11. Cf. *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

12. Cf. *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

13. Other jurisdictions have adopted a similar view of the commercial realities inherent in a foreign manufacturer's distribution of its products in this country, notwithstanding the man-

The Supreme Court in *World-Wide Volkswagen,* having acknowledged the competing interests which impact the jurisdictional question, then proceeded to examine the defendant's contacts, or rather the lack thereof, with the Oklahoma forum and concluded that they were too attentuated to justify the exercise of jurisdiction. A comparison of the defendant's relation to that forum with that of KHD herein resolves any question of whether jurisdiction is constitutionally permissible in the instant case.

Initially, the Court in *World-Wide Volkswagen* noted that the element of fortuitousness which accompanied the automobiles presence in Oklahoma defeated the concept of foreseeability in the due process context. The United States Supreme Court defined the inquiry in these terms:

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

The automobile in that case was purchased in New York by New York residents from a New York retailer who distributed to New York, New Jersey and Connecticut. The injury occurred in Oklahoma while plaintiffs were en route to Arizona. The record was devoid of any showing that any automobile sold by World-Wide ever entered Oklahoma, but for the exception at bar.

Contrariwise, the presence of KHD's product in this forum was neither isolated nor fortuitous. The tractor which injured plaintiff, Noland Waters, herein, was one of a shipment which comprised 40 percent of KHD's manufacture designated for sale in the United States. Moreover, not only did Delaware afford a modest market for the product (in 1980 and 1981, a total of five tractors were sold here, resulting in proceeds of $110,263.00), but it also facilitates the entry into this country of that portion of the product to be distributed in the northeast and midwest.

Additionally, the United States Supreme Court concluded that the New York retailer had not purposefully availed itself of the benefits and privileges of conducting activity within the forum State,[14] inasmuch as defendant had not made any "effort to serve, *directly or indirectly,*[15] the market for its product" in Oklahoma. However, the undisputed facts in the instant case indicate that KHD both serves and solicits the market in Delaware indirectly through

---

ner in which the product is marketed. *See,* e.g., *Certisimo v. Heidelberg Company,* N.J.Super., 122 N.J.Super. 1, 298 A.2d 298 (1972) (German manufacturer sold product in Germany to American distributor with the expectation that it would be sold in some American states was constitutionally subject to New Jersey jurisdiction); *Hicks v. Kawasaki Heavy Industries,* M.D.Pa., 452 F.Supp. 130 (1978) (Japanese manufacturer sold motorcycles in Japan to its exclusive American distributor which was 98 percent owned by the manufacturer; deliveries were made in Japan; due process was not violated by asserting jurisdiction over manufacturer); *Crucible, Inc. v. Stora Kopparbergs Bergslags AB,* W.D.Pa., 403 F.Supp. 9 (1975) (International steel manufacturer sold steel in Sweden to its wholly owned American subsidiary was subject to jurisdiction in Pennsylvania); *Hetrick v. American Honda Motor Co., Inc.,* D.Neb., 429 F.Supp. 116 (1976) (Japanese manufacturer sold motorcycles in Japan to exclusive American distributor with title to motorcycle transferring in Japan was subject to personal jurisdiction in Nebraska); *Rietsch v.*

*Societe Anonyme Des Automobiles Peugeot,* N.Y.Supr., 45 Misc.2d 274, 256 N.Y.S.2d 772 (1965) (French manufacturer, sold Peugeot automobiles in France to its wholly owned subsidiary and was subject to the jurisdiction of New York); and *Dotterweich v. Yamaha International Corporation,* D.Minn., 416 F.Supp. 542 (1976) (Japanese manufacturer sold snowmobiles in Japan to an independent distributor was subject to the jurisdiction of Minnesota).

**14.** Cf. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

**15.** Implicit in the United States Supreme Court's decision in *World-Wide Volkswagen* in the recognition that a manufacturer's marketing efforts need not culminate in *direct* contact with the forum to render the manufacturer amenable to jurisdiction. All due process requires is that the corporation "deliver its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."

the activities of its subsidiary/distributor Deutz. Moreover, KHD through Deutz has availed itself of the benefits of the forum in its use of this State (specifically the Port of Wilmington) as the conduit through which KHD tractors enter the country.

Therefore, based on the guidelines established in *International Shoe* and its progeny as applied to the relationship of KHD with this forum, the Court· concludes that the exercise of jurisdiction over KHD is consistent with due process. Accordingly, defendant KHD's motion to dismiss for want of jurisdiction under 10 *Del.C.* § 3104 is hereby denied.

Having herein sustained *in personam* jurisdiction over KHD pursuant to § 3104(c)(1), this Court need not consider whether jurisdiction can likewise be asserted under § 3104(c)(2) and § 3104(c)(4).

IT IS SO ORDERED.