SEARS, ROEBUCK AND CO., Plaintiff,

v.

SEARS PLC and Sears Financial
Services Limited, Defendants.

Civ. A. No. 88–342–JLL.

United States District Court,
D. Delaware.

Nov. 30, 1990.

Arthur G. Connolly, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, Del., James A. Drobile of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Nancy Schaefer, Thomas D. Rosenwein and David S. Fleming of Schaefer, Rosenwein & Fleming, Chicago, Ill., of counsel, for plaintiff.

Jesse A. Finkelstein, Robert W. Whetzel and James C. Strum of Richards, Layton & Finger, Wilmington, Del., Shelby R. Grubbs and Susan Kerr Lee of Grant, Konvalinka & Grubbs, Chattanooga, Tenn., of counsel, for defendants.

## OPINION

LATCHUM, Senior District Judge.

### I. BACKGROUND

On June 28, 1988 Sears, Roebuck and Company ("Roebuck") filed a trademark and trade name infringement action against Sears plc ("PLC") a British corporation.[1] (Complaint, Docket Item ["D.I."] 1.) Discovery closed on December 15, 1989. The Court issued two memorandum opinions and related orders on July 24, 1990 which addressed PLC's motions to dismiss, and motions for summary judgment made by both PLC and Roebuck. *Sears, Roebuck & Co. v. Sears plc*, 744 F.Supp. 1289, 744 F.Supp. 1297 (D.Del. 1990). For present purposes, it is noteworthy that the Court, in its opinions, dismissed the claims against Sears Financial Services Limited and the American Deposi-

---

1. The Court will simply refer to Roebuck's allegations of trademark and trade name infringe-
ment as "the alleged trade name infringements."

tary Receipts ("ADR")[2] claims against PLC for lack of personal jurisdiction, but did not dismiss the claims against PLC related to the alleged trade name infringements of its Delaware subsidiary Delaware Mercantile Holding Company ("DMH"). The Court also noted in the July 24 opinions that it could not grant summary judgment for PLC on the claims related to activities by PLC's non-Delaware subsidiaries[3] because PLC may have "directed and controlled" their use of the trade name "Sears." What was left open in footnote 17, because the parties failed to brief the issue, was whether the Court has personal jurisdiction over PLC for the alleged trade name infringements of these subsidiaries. As the Court noted at footnote 17:

> While the parties have not argued it, under the law of the case as established above, it is unclear that this Court has personal jurisdiction over PLC for the acts of its non-Delaware subsidiaries.

*Sears*, 744 F.Supp. 1297, 1309 n. 17. If the Court lacks personal jurisdiction over PLC for these claims, it will have to dismiss them pursuant to Fed.R.Civ.P. 12(b)(2). The Court has received supplemental briefs from the parties, and will now decide the question left open in footnote 17.

## II. FACTS

PLC is the parent of several American and British subsidiaries that have only minimal, if any, contacts with Delaware. PLC

itself is incorporated under the laws of England and Wales and is only subject to the Court's specific personal jurisdiction. The Court's exercise of specific personal jurisdiction over PLC has been premised on either of two theories: first, PLC took advantage of Delaware law when it incorporated a subsidiary, DMH, in Delaware; and second, there is a limited agency between PLC and DMH by which PLC allegedly directs and controls DMH's use of the trade name "Sears." A more detailed discussion of the case's procedural history and facts can be found in the Court's opinions of July 24, 1990. *Sears, Roebuck & Co. v. Sears plc*, 744 F.Supp. 1289, 744 F.Supp. 1297 (D.Del.1990).

## III. DISCUSSION

### A. *Introduction*

The Court's personal jurisdiction over PLC, an out-of-state party, is governed by Fed.R.Civ.P. 4(e). Under Rule 4(e) the Court can assert personal jurisdiction over PLC only to the extent permitted by Delaware's long arm statute.[4] In an opinion dated July 24, 1990 the Court held that only § 3104(c)(3) of Delaware's long arm statute was applicable to the claims asserted by Roebuck against PLC.[5] If personal jurisdiction over PLC for the acts of its non-Delaware subsidiaries cannot be had under § 3104(c)(3) the Court must dismiss

---

**2.** American Depositary Receipts have been defined by the Court as follows:

> ADRs, representing depositary shares, are issued by United States banks against securities of foreign corporations which those banks hold as depositaries. United States investors use ADRs as a substitute for trading the foreign security itself.

*Sears*, 744 F.Supp. 1297, 1300.

**3.** The non-Delaware subsidiaries to which the footnote 17 issue was directed are: The Marcus Company, Inc.; Sears Exploration and Development Ltd.; Millets Leisure Ltd.; William Hill Organization Ltd.; Selfridges Ltd.; Portman Ltd.; British Shoe Corp. and E.P. Securities.

**4.** 10 *Del.C.* § 3104 (1988).

**5.** The Court has already held that pursuant to § 3104(c)(4) PLC lacks sufficient contacts with

Delaware for the Court to assert general jurisdiction over PLC for its conduct in other states. *Sears* at 1304–06. Further, under *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985), the Court cannot ignore Delaware's long arm statute and assert personal jurisdiction over PLC for conduct in other states on a "national contacts" theory. The "national contacts" theory applies where a foreign defendant is sued in federal court on a federal cause of action. The theory would allow a district court to assert personal jurisdiction over a foreign defendant based on the defendant's contacts with the United States generally. In rejecting the "national contacts" theory, the Third Circuit held in *Max Daetwyler* that absent other federal legislation, Rule 4(e) limits the District Court's exercise of personal jurisdiction to that of a state court for the state in which the district court sits. *See also Afros S.P.A v. Krauss–Maffei Corp.*, 624 F.Supp. 464, 466 (D.Del.1985).

these claims for lack of personal jurisdiction.

█ Section 3104(c)(3) of Delaware's long arm statute gives the Court *specific* personal jurisdiction over out-of-state defendants, *see La Nuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del.1986), and reads as follows:

> (c) As to a cause of action brought by any person *arising from any of the acts enumerated in this section*, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:
>
> \*   \*   \*   \*   \*   \*
>
> (3) Causes tortious injury in the State by an act or omission in this State;

(emphasis added). Under this section, a court can exercise specific personal jurisdiction over a defendant on either of two grounds. First, the Court has specific jurisdiction over defendants who cause tortious injury in Delaware by their acts or omissions in the state. *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 590 (7th Cir. 1984).[6] These acts or omissions within Delaware are called "jurisdictional acts." *Id.* Second, the Court can assert personal jurisdiction over a party for its involvement in a cause of action that "arises from" an above described "jurisdictional act," regardless of the locus of that cause of action. *Id.* In either case, the Court must also be certain that its exercise of jurisdiction comports with the requirements of due process. *Id.*

B. *Basis Upon Which Personal Jurisdiction Can Be Exercised Over A Parent Corporation For The Acts Of Its Subsidiaries*

█ The primary issue before the Court is whether the claims against PLC for the acts of its non-Delaware subsidiaries are sufficiently related to Delaware so as to justify an exercise of specific jurisdiction over PLC pursuant to § 3104(c)(3). For purposes of clarification, the Court notes that Roebuck may be able to prove sufficient facts at trial to warrant holding PLC liable for the trade name infringements of its non-Delaware subsidiaries. The Court recognizes that under Delaware law, tortious conduct by a subsidiary does not alone justify an exercise of personal jurisdiction over the parent. *Dentsply International, Inc. v. Pentron Corp.*, 648 F.Supp. 856, 860–61 (D.Del.1986), *Waters v. Deutz Corp.*, 460 A.2d 1332, 1337 (Del.Super.1983) ("Having examined all of the aforementioned precedents, this Court acknowledges the general rule that ownership alone of a subsidiary is not sufficient to justify jurisdiction over the parent."). But in the present case, Roebuck has alleged sufficient facts to survive summary judgment on the issue of whether PLC "directed and controlled" its subsidiaries in the use of the name "Sears." *Sears* at 1309. It is this alleged "direction and control" that could give rise to specific jurisdiction over PLC for the acts of its subsidiaries. *Id.* at 1306 & n. 7.

In its July 24 opinion, the Court recognized that under a theory of "limited agency" a court can assert specific personal jurisdiction over a parent company, for the acts of its subsidiaries, to the extent that the actions of the subsidiaries are "directed and controlled" by the parent. *Id.* (citing *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.*, 542 F.Supp. 53 (D.Del.1982)). With respect to PLC's subsidiaries, the Court held:

> The statement of PLC's chairman that "while Sears plc has the ability to prevent a subsidiary from using the 'Sears' name, in practice it would not do so,"

---

6. Delaware courts have traditionally relied on the judicial interpretations of Illinois' long arm statute when interpreting Delaware's statute. This is the case because Delaware's long arm statute was modeled on that of Illinois. *Waters v. Deutz Corp.*, 460 A.2d 1332, 1334 (Del.Super. 1983) ("Derived from the Illinois Long Arm Statute, the Delaware statute may be similarly construed by recourse to the legislative and decisional law of Illinois. This aid in interpretation of § 3104 evolves from the presumption, well-established in Delaware, that when our Legislature adopts a statute directly modeled upon that of a foreign state, the Legislature likewise intended to adopt the judicial construction accorded the statute by the courts of the foreign state.") (citations and footnotes omitted); *Sears* at 1301 n. 3 (citing *Plummer & Co. Realtors v. Crisafi*, 533 A.2d 1242, 1246 (Del.Super.1987)) & 1307 n. 9.

D.I. 238A at 28–29, indicates that PLC has retained control over the use of the name "Sears." The extent of this control, and whether that control creates an agency relationship, involves disputed facts that are inappropriate for resolution in a motion for summary judgment. *Sears* at 1309. The Court has already concluded that a limited agency relationship exists between PLC and its Delaware subsidiary DMH. *Id.* at 1306 n. 7 & 1309. The Court finds that for present purposes there is no reason to distinguish between the "direction and control" exercised by PLC over DMH and that exercised over PLC's non-Delaware subsidiaries. Roebuck has sufficiently alleged that PLC "directed and controlled" its non-Delaware subsidiaries in their use of the name "Sears" such as to warrant an exercise of specific jurisdiction over PLC for the acts of trade name infringement by the non-Delaware subsidiaries, if the Court has jurisdiction over these claims. But the Court cannot exercise jurisdiction over these claims unless the alleged violations by the non-Delaware subsidiaries are sufficiently related to conduct in Delaware for which PLC is already accountable and subject to personal jurisdiction. This latter point is the crux of the "footnote 17 issue."

## C. *Delaware's Long Arm Statute*

Turning to the issue of whether Delaware's long arm statute permits jurisdiction over PLC for trade name infringements by its non-Delaware subsidiaries, the Court first notes that Roebuck has failed to allege any "acts or omissions" in Delaware by the non-Delaware subsidiaries.[7] In other words, there are no "jurisdictional acts" by these non-Delaware subsidiaries on which the Court could base specific jurisdiction over PLC. Therefore, if the Court is going to exercise specific personal jurisdiction over PLC, for acts of trade name infringement by PLC's non-Delaware subsidiaries, Roebuck must show that the alleged trade name infringements "arise from" tortious acts in Delaware for which

the Court has personal jurisdiction over PLC. The claims that are based on the acts of the non-Delaware subsidiaries must be shown to have "arisen from" "jurisdictional acts" by PLC in Delaware. Whether a cause of action "arises from" other conduct, of course, depends upon the nature of the conduct from which the cause of action is alleged to have arisen. It is therefore necessary for the Court to first set out what the "jurisdictional acts" in Delaware, by PLC, are in the present case.

Specific jurisdiction over PLC for the out-of-state actions of its non-Delaware subsidiaries can only be obtained if those actions "arise from" acts in Delaware for which the Court already has jurisdiction over PLC. The Court, in its July 24 opinion, held that it had specific personal jurisdiction over PLC for its act of incorporating a subsidiary in Delaware, DMH, as well as on a "limited agency" theory. Under the "limited agency" theory the Court can assert specific personal jurisdiction over PLC for the acts of its Delaware subsidiary, DMH, to the extent that DMH acted as an agent of PLC. The Court held that there were sufficient facts in the record to suggest that DMH acted as a limited agent of PLC with respect to DMH's use of the trade name "Sears." The Court has specific personal jurisdiction over PLC for the trade name infringements of PLC's non-Delaware subsidiaries only if those acts of infringement "arise from" PLC's incorporation of DMH in Delaware or DMH's infringement of the trade name "Sears." The issue then, that the Court must next address, is whether the trade name infringements by the non-Delaware subsidiaries "arose from" the above "jurisdictional acts."

## D. *The "Arising From" Standard of The Delaware Long Arm Statute*

Pursuant to Delaware's long arm statute, courts can exercise personal jurisdiction over defendants in any cause of action that "arises from" a "jurisdictional act" in

---

**7.** Because Roebuck is the plaintiff, it bears the burden of alleging sufficient facts to warrant the Court's exercise of personal jurisdiction over

the defendant. *Altech Industries, Inc., v. Al Tech Specialty Steel Corp.,* 542 F.Supp. 53, 55 (D.Del. 1982); *see also Sears* at 1301.

Delaware. For present purposes, a jurisdictional act is any act fitting the description of § 3104(c)(3), namely, an act or omission in Delaware that causes tortious injury in the state. The Court, in its July 24 opinion noted that the Illinois terminology of "lying in the wake of" can be used interchangeably with Delaware's statutory language "arising from." *Sears* at 1307. Regardless of the terminology used, *these statutes require an in-state act by an out-of-state defendant, that sets in motion a series of events which form the basis for the cause of action before the court.* The necessary relationship between an out-of-state defendant's forum contacts and a cause of action that "arises from" those contacts can be illustrated by reference to the cases.

In *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209 (7th Cir.1984), the non-Illinois defendant went to Illinois to negotiate an agreement under which it would find buyers for a third party's ice cream machines. The third party seller was an Illinois corporation. The defendant also had meetings in Illinois with the seller concerning the terms that would be offered the out-of-state purchaser. The out-of-state purchaser eventually brought a breach of contract action in which the out-of-state defendant was named. The defendant was not a party to this contract. The issue that the Seventh Circuit had to decide was whether Illinois could exercise personal jurisdiction over the out-of-state defendant because the contract "arose from" the defendant's agreements in Illinois to seek a buyer and negotiate the contract that was now at the center of the dispute. The court held that the sales contract and contract dispute "arose from" the defendant's meetings in Illinois by which it agreed to seek out purchasers for the ice cream machines.

In *In re Oil Spill by Amoco Cadiz off Coast of France*, 699 F.2d 909 (7th Cir. 1983), *cert. denied sub nom. Astilleros Espanoles, S.A. v. Standard Oil Co.*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 172 (1983), the Seventh Circuit considered the "arising from" language in the Illinois long arm statute. In that case, French plaintiffs sued Amoco and a Spanish ship manufacturer, Astilleros, for damages caused by an oil spill off the coast of France. The "jurisdictional act" in this cause of action was the negotiation and signing of a contract between the defendants Amoco and Astilleros in which Astilleros agreed to build a tanker for Amoco. The French plaintiffs were not a party to this contract nor were they in the chain of title to the ship. The court had to decide whether the claims for damages caused by the oil spill "arose from" the signing of the contract to build the ship that spilled the oil. In concluding that the oil spill claims "arose from" the signing of the contract the Seventh Circuit said:

> [The French plaintiffs] were not harmed just by the defective condition of the ship; they were harmed by Amoco's operation of the ship in its defective condition, and *the negotiation and signing of the contract were critical steps in the chain of events that led to the oil spill.* So there is a sense in which the spill and resulting damages may be said to arise from the transaction of business in Illinois between Amoco and Astilleros.

*Id.* at 917 (emphasis added). In both *In re Oil Spill* and *Deluxe Ice Cream*, claims "arose from" "jurisdictional acts" because the acts within the jurisdiction were "critical steps in the chain of events" resulting in the cause of action before the court. Without this relationship between the "jurisdictional act" and the subsequent cause of action, a court cannot use the "arising from" language of the Illinois and Delaware long arm statutes to exercise personal jurisdiction over a defendant. It is this causal connection that Roebuck's Delaware and non-Delaware claims lack.

In its July 24 opinion, the Court noted that it was the nature of the acts giving rise to a claim, rather than the nature of the claims, that determines whether a cause of action "arises from" contacts with the forum. *Sears* at 1307. This interpretation of "arising from" was applied by the Court to Roebuck's claims against PLC for the sale of PLC American Depositary Re-

ceipts (ADRs) [8] by New York banks. Even though the ADR claims were based on alleged violations of Roebuck's trade name, they did not "arise from" the trade name violations in Delaware by DMH because "[s]imply put, Roebuck ha[d] alleged two separate torts in two separate fora." *Id.* This reasoning is equally applicable to Roebuck's claims against PLC for the acts of its non-Delaware subsidiaries. Roebuck's allegations that PLC "directed and controlled" the trade name infringements of all its subsidiaries do not distinguish the ADR claims. Presumably, the trade name infringements related to the sale of ADRs were also the product of PLC's decision not to limit use of the name "Sears."

Roebuck's attempts to re-characterize its non-Delaware claims against PLC as part of a larger conspiracy to violate Roebuck's trade name are also unavailing. Roebuck has failed to sufficiently allege a common scheme by PLC and its subsidiaries to violate Roebuck's trade name. Nor does the Court believe, that based on the evidence in the record, any such scheme could be proven. PLC's challenge to the Court's jurisdiction came after the completion of discovery, and the onus was therefore on Roebuck to show that, based on the facts in the record, personal jurisdiction could be exercised over PLC for the acts of its non-Delaware subsidiaries. *Sears* at 1301. Under the circumstances, the Court sees no reason to depart from the rule that each case of trade name or trademark infringement is a separate tort arising where the confusion to the customer occurs. *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633,

639 (2d Cir.1956), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *Waltham Watch Co. v. Hallmark Jewelers, Inc.,* 336 F.Supp. 1010, 1011 (N.D.Ill.1971); *Heritage House Frame & Moulding Co. v. Boyce Highlands Furniture Co.,* 88 F.R.D. 172, 173 (E.D.N.Y.1980); *see also Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 417 (9th Cir.1977). Each of the alleged trade name infringements by PLC's subsidiaries is a separate and unrelated cause of action occurring in a separate forum. Simply put, Roebuck has alleged separate torts occurring in separate fora, and the Court therefore lacks specific jurisdiction over PLC for the acts of its non-Delaware subsidiaries.

### E. *The Due Process Restrictions On The Court's Exercise of Personal Jurisdiction*

■ Under Delaware's long arm statute, a court can exercise personal jurisdiction over a defendant to the extent allowed by due process.[9] The Court's conclusion that it cannot exercise specific jurisdiction over PLC for the acts of its subsidiaries, because those acts do not "arise from" PLC's contacts with Delaware, does not conflict with Delaware's rule that jurisdiction is to be exercised to the full extent permitted by due process. An exercise of personal jurisdiction over PLC for the acts of its non-Delaware subsidiaries would run afoul of due process.

The relevant constitutional issue is whether, under the Due Process Clause of the Fourteenth Amendment,[10] the Court

---

**8.** American Depositary Receipts are defined *supra* at 1224 n. 2.

**9.** Delaware's long arm statute has been liberally interpreted to allow personal jurisdiction to the extent permitted by due process. *Afros S.p.A. v. Krauss–Maffei Corp.,* 624 F.Supp. 464, 466 (D.Del.1985) ("Section 3104(c) has been construed broadly so as to confer jurisdiction to the maximum extent permitted by due process.") (citations omitted); *Transportes Aereos De Angola v. Ronair, Inc.,* 544 F.Supp. 858, 864 (D.Del. 1982) ("Federal courts in this district, moreover, have given an expansive interpretation to the long arm statute, ruling that § 3104 must be construed as conferring jurisdiction to the maximum perimeters of the due process clause.") (citations omitted).

**10.** The Court is exercising jurisdiction pursuant to Fed.R.Civ.P. 4(e). The Third Circuit in *Max Daetwyler Corp.,* noted:

> In enacting a jurisdictional statute, a state legislature is generally limited by the due process constraints of the fourteenth amendment. Rule 4(e), by remitting federal courts to state statutes, imposes similar fourteenth amendment due process restrictions on the jurisdictional reach of federal courts hearing nondiversity cases. This, in turn, leads to the prospect of a federal court refusing to adjudicate a federal claim because the courts of the state in which it sits could not accept jurisdiction.

*Id.* at 296 (footnote omitted). The Third Circuit made the same observation, again in the context of the Pennsylvania long arm statute, in *North*

can exercise specific personal jurisdiction over PLC for the acts of its non-Delaware subsidiaries. Due process requires that there be sufficient minimum contacts between the defendant and a forum before a court of that forum can exercise personal jurisdiction over the defendant. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). When a court's specific jurisdiction is at issue, as is the case here, the due process requirement of "minimum contacts" is satisfied only if there is "a relationship among the defendant, the forum and the litigation." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984) (citation omitted). As the Supreme Court in *Helicopteros* stated:

> The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state to assert *in personam* jurisdiction over a nonresident defendant. *Pennoyer v. Neff,* 95 U.S. 714 [24 L.Ed. 565] (1878). Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 343, 85 L.Ed. 278] (1940). When [a court seeks to exercise specific jurisdiction over a cause of ac-

tion], the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of *in personam* jurisdiction. *Shaffer v. Heitner,* 433 U.S. 186, 204 [97 S.Ct. 2569, 2579, 53 L.Ed.2d 683] (1977).

*Id.* at 414, 104 S.Ct. at 1872 (footnote omitted). The key issue before the Court, therefore, is whether there is a relationship between PLC, Delaware and the independent tortious acts of PLC's non-Delaware subsidiaries such as to warrant an exercise of specific jurisdiction. Roebuck's allegations that non-Delaware subsidiaries violated its trade name are unrelated to the forum state of Delaware. An exercise of specific jurisdiction over PLC, based on these out-of-state acts, would therefore violate due process.

The Court has already concluded that Roebuck's claims of trade name infringement constitute separate unrelated allegations of tortious conduct. Nor do the non-Delaware claims "arise from" the Delaware claims so as to satisfy due process. In *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the defendants owned property in Delaware, yet Delaware could not assert jurisdiction over the defendant in a derivative suit because, as the Supreme Court stated:

> Yet that property is not the subject matter of this litigation, nor is the underlying cause of action related to the property. [The property], therefore, [does not] provide contacts with Delaware sufficient to support the jurisdiction of that State's courts over [defendants].

*Id.* at 213, 97 S.Ct. at 2584. Because Roebuck's out-of-state claims do not "arise from" PLC's contacts with Delaware and are not directly related to Delaware, the Court cannot, consistent with due process, exercise specific jurisdiction over PLC for the acts of its non-Delaware subsidiaries.

*Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689–90 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990). In *North Penn,* the Third Circuit concluded:

> Rule 4(e) of the Federal Rules of Civil Procedure authorizes a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. The Pennsylva-

nia Long Arm Statute states in relevant part: [that Pennsylvania's jurisdiction extends to the full extent permitted by the United States Constitution].... The reach of this section is coextensive with the due process clause of the fourteenth amendment to the United States Constitution.

*Id.* at 690 (citations omitted).

The Supreme Court's decision in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) is not to the contrary.

In *Keeton*, the defendant out-of-state corporation circulated its magazine nationwide. In her complaint, the plaintiff alleged that certain issues of the magazine contained libelous material. The Supreme Court held that the regular circulation of the magazine in the forum state constituted the carrying on of "general business" in the forum state and that the libelous acts, therefore, arose from that business. The Supreme Court went on to hold that due process would permit an exercise of specific personal jurisdiction over the defendant for damages to the plaintiff both within and outside the forum state. The Supreme Court reached this conclusion because the damages suffered nationwide arose from a single tortious act under the "single publication rule." The "single publication rule" has been adopted in most states and acts to make a libelous publication a single nationwide tort instead of separate torts in each state, as had been the case under the common law. In *Keeton*, therefore, there was a single tortious act that resulted in damages nationwide, while in the present case, each alleged violation of Roebuck's trade name, by a PLC subsidiary, comprised a separate tort. This distinction between one tort and several separate torts was central to the Supreme Court's holding.

In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." ... [T]he contacts between respondent and [the forum] must be such that it is "fair" to compel [the defendant] to defend a multistate lawsuit in [the forum state] seeking nationwide damages for all copies of the five issues in question,

\*   \*   \*   \*   \*   \*

And, since respondent can be charged with knowledge of the "single publication rule," it must anticipate that such a suit will seek nationwide damages.... There is no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed.

*Id.* at 775 & 781, 104 S.Ct. at 1478–79, 1481–82 (citations omitted). Since the alleged acts of trade name infringement by PLC's non-Delaware subsidiaries are separate from the alleged tortious acts of PLC in Delaware, the Supreme Court's decision in *Keeton*, under the "single publication rule" is entirely distinguishable.

## IV. CONCLUSION

Pursuant to Fed.R.Civ.P. 12(b)(2) the Court will dismiss the claims against PLC that are based on alleged acts of trade name and trademark infringement by PLC's non-Delaware subsidiaries.[11] These non-Delaware subsidiaries are: The Marcus Company, Inc.; Sears Exploration and Development Ltd.; Millets Leisure Ltd.; William Hill Organization Ltd.; Selfridges Ltd.; Portman Ltd.; British Shoe Corp. and E.P. Securities.

An Order in accordance with this Opinion will issue.

---

**11.** In its July 24 opinion the Court held that it had jurisdiction over PLC for the acts of DMH, in part, because PLC directed and controlled DMH, a Delaware corporation, in its use of the trade name "Sears." *Sears* at 1306 & 1309. This same rationale applies to the claims against PLC based on the conduct of The Butler Group. By PLC's own admission, The Butler Group is a Delaware corporation. (Supplemental Opening Brief of Sears PLC in Support of Its Motion to Dismiss Addressing Footnote 17 of the July 24, 1990 Opinion [D.I. 289] at 9 & 13.) As such, the Court has specific personal jurisdiction over PLC for alleged acts of trade name infringement by the Butler Group because PLC "directed and controlled" The Butler Group's use of the trade name "Sears." *See Sears* at 1306 & 1309.