# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

REPUBLIC BUSINESS CREDIT, LLC, )
                               )
    Plaintiff,               )
                               )
    v.                      )    C.A. No. N15C-09-233 JRJ
                               )
METRO DESIGN USA, LLC,      )
AMROCK CAPITAL LLC, GREG    )
WETANSON, MAXINE          )
WETANSON, SEAN MACPHERSON, )
and ROBERT JACOBS,        )
                               )
    Defendants.           )

## OPINION

Date Submitted: April 8, 2016
Date Decided: June 29, 2016

*Upon Defendants Metro Design USA, LLC, Greg and Maxine Wetanson, Sean MacPherson and Robert Jacobs' Motion to Dismiss*: **GRANTED in part, and DENIED in part.**

*Upon Defendant AmRock Capital, LLC's Motion to Dismiss Complaint for Lack of Personal Jurisdiction*: **GRANTED.**

Stephen E. Jenkins, Esquire, Peter H. Kyle, Esquire (argued), Ashby & Geddes, P.A., Wilmington, DE, Attorneys for Plaintiff Republic Business Credit, LLC.

Ronald J. Drescher, Esquire, Drescher & Associates, P.A., Wilmington, DE, Sean S. MacPherson, Esquire (*pro hac vice*) (argued), MacPherson Counsel LLP, Redding, CT, Attorneys for Defendants Metro Design USA, LLC, Greg Wetanson, Maxine Wetanson, Sean MacPherson, and Robert Jacobs.

Elihu E. Allinson III, Esquire (argued), Sullivan Hazeltine Allinson LLC, Wilmington, DE, Attorney for Defendant AmRock Capital LLC.

**Jurden, P.J.**

# I. INTRODUCTION

Before the Court is Defendants Metro Design USA, LLC, Greg and Maxine Wetanson, Sean MacPherson, and Robert Jacobs's Motion to Dismiss[1] for lack of personal jurisdiction and Defendant AmRock Capital, LLC's Motion to Dismiss Complaint for Lack of Personal Jurisdiction.[2]

For the following reasons, Defendants Metro Design USA, LLC, Greg and Maxine Wetanson, Sean MacPherson, and Robert Jacobs' Motion to Dismiss is **GRANTED in part, and DENIED in part**, and Defendant AmRock Capital, LLC's Motion to Dismiss Complaint for Lack of Personal Jurisdiction is **GRANTED.**

---

[1] Defendants[] Metro Design USA, LLC, Greg and Maxine Wetanson, Sean MacPherson and Robert Jacobs' Memorandum of Law in Support of Their Motion to Dismiss ("Investors' Mot. Dismiss") (Trans. ID. 58094786); Defendants Greg and Maxine Wetanson, Sean MacPherson and Robert Jacobs' Supplemental Memorandum of Law in Support of Their Motion to Dismiss ("Investors' Reply") (Trans. ID. 58368687).

[2] AmRock's Motion to Dismiss also alleges insufficiency of service of process because: (1) the individual served was not AmRock, an employee or officer of AmRock, or an agent of AmRock; and (2) service was not addressed to AmRock's registered agent. Defendant AmRock Capital, LLC's Opening Brief in Support of Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Insufficiency of Service of Process ¶ 40 ("AmRock's Mot. Dismiss") (Trans. ID. 58179060). After AmRock moved to dismiss, Plaintiff Republic Business Credit, LLC served AmRock through its registered agent and submitted copies of the Alias Summons and mail return receipt as exhibits to its response to AmRock's Motion to Dismiss. Plaintiff Republic Business Credit LLC's Response in Opposition to Defendant AmRock Capital LLC's Motion to Dismiss for Lack of Personal Jurisdiction at 26–27 ("RBC Resp. AmRock's Mot. Dismiss") (Trans. ID. 5832800). "The return receipt or other official proof of delivery shall constitute presumptive evidence that the notice mailed was received by the defendant or the defendant's agent." 10 *Del. C.* § 3104(h)(2). AmRock made no further argument on the issue of service of process either in its reply brief or at oral argument. Thus, AmRock's insufficient service of process argument is moot.

## II. FACTUAL BACKGROUND

### A. Parties and Causes of Action

Plaintiff Republic Business Credit, LLC ("RBC") is a Louisiana limited liability company with a principal place of business in New Orleans, Louisiana.[3] RBC is a business that "factors accounts receivable."[4]

Defendant Metro Design USA, LLC ("DE Metro Design") is a Delaware limited liability company and is registered as a foreign limited liability company in New Jersey under the name "Metro Design USA Delaware LLC."[5]

Defendant AmRock Capital, LLC ("AmRock") is a Florida limited liability company that financed inventory for non-party Metro Design USA LLC ("NJ Metro Design").[6]

Defendants Sean MacPherson and Robert Jacobs are residents of Connecticut,[7] and Defendants Greg Wetanson and Maxine Wetanson are residents of New York[8] (collectively "the Investor Defendants").

RBC asserts seven causes of action: (1) breach of contract (against AmRock); (2) conversion (against all Defendants); (3) violation of the Delaware Deceptive Trade Practices Act (against all Defendants); (4) common law fraud

---

[3] Compl. ¶ 1 (Trans. ID. 57922183).
[4] Id.
[5] Id. ¶ 3.
[6] Id. ¶¶ 4, 21.
[7] Id. ¶¶ 7–8.
[8] Id. ¶¶ 5–6.

3

(against all Defendants); (5) tortious interference with contract (against the Investor Defendants and DE Metro Design); (6) civil conspiracy (against all Defendants); and (7) unjust enrichment (against all Defendants).[9]

## B. The Relationship Between NJ Metro Design, RBC, and AmRock

NJ Metro Design is a company that marketed and sold household products to "Big Box" retailers.[10] In August 2013, Plaintiff RBC entered into an "Amended and Restated Agreement for Purchase and Sale" with NJ Metro Design (the "Factoring Agreement").[11] Pursuant to the Factoring Agreement, RBC agreed to buy NJ Metro Design's accounts receivable and advance money to NJ Metro Design.[12] In exchange for RBC's financial services, NJ Metro Design granted RBC a "first priority and exclusive security interest" in all of NJ Metro Design's assets, including "General Intangibles."[13]

To secure additional financing, NJ Metro Design entered into a "Purchase and Sale Agreement" with Defendant AmRock.[14] Pursuant to the Purchase and Sale Agreement, AmRock became an "inventory lender" to NJ Metro Design, purchasing inventory from suppliers for NJ Metro Design.[15]

In connection with the Purchase and Sale Agreement, NJ Metro Design,

[9] *Id.* ¶¶ 53–89
[10] *Id.* ¶¶ 2, 9–10.
[11] *Id.*, Ex. 2 ("Factoring Agreement").
[12] Compl. ¶¶ 16–18.
[13] Factoring Agreement ¶ 6.
[14] Investors' Mot. Dismiss, Ex. A ("Purchase and Sale Agreement").
[15] AmRock's Mot. Dismiss at 2; Purchase and Sale Agreement at 1.

4

AmRock, and RBC entered into an "Intercreditor Agreement," which granted AmRock a first priority security interest "in any or all of the Inventory Collateral."[16] The Intercreditor Agreement defined "Inventory Collateral" as all of NJ Metro Design's inventory "while owned by [NJ Metro Design], excluding inventory sold in the normal course which sale has given rise to an Account [receivable]."[17]

In early 2014, NJ Metro Design engaged Defendant Robert Jacobs ("Jacobs") and his company, Robo Associates, LLC, to "evaluate opportunities to stabilize and grow the business."[18] In an attempt to restructure NJ Metro Design's debt, Jacobs began discussions with NJ Metro Design's creditors, including AmRock.[19]

In January 2015, in lieu of exercising its remedies under the Purchase and Sale Agreement, AmRock entered into a "Forbearance Agreement" with NJ Metro Design.[20] Pursuant to the Forbearance Agreement, NJ Metro Design agreed that it was in default under the Purchase and Sale Agreement and agreed "that all inventory held by [NJ Metro Design] is owned by AmRock, and [NJ Metro

---

[16] Compl., Ex. 4 ("Intercreditor Agreement").

[17] Intercreditor Agreement at 1 (third "Whereas" clause).

[18] Investors' Mot. Dismiss at 2. NJ Metro Design had substantial outstanding debts, including approximately $1,000,000.00 owed to AmRock. Investors' Mot. Dismiss, Ex. B ¶ 1("Forbearance Agreement").

[19] Investors' Reply, Ex. J. ¶ 4 ("Jacobs Aff."); AmRock's Mot. Dismiss, Ex. A ¶ 8 ("Tomasino Aff.").

[20] Forbearance Agreement ¶ 5.

Design] is holding such Inventory for and on behalf of AmRock, and subject to AmRock's direction and control."[21]

## C. The Lausar Investor and the Creation of DE Metro Design

As Jacobs continued to work toward restructuring NJ Metro Design, a third-party investor ("Lausar") expressed an interest in investing $500,000.00 in NJ Metro Design through a "Note Purchase Agreement" and an "Unsecured Convertible Note."[22] In the Note Purchase Agreement, Lausar conditioned its agreement to invest on NJ Metro Design merging into a newly formed Delaware limited liability company.[23] In connection with the anticipated merger, NJ Metro Design would completely restructure its operations and debt.[24]

Defendant Sean MacPherson ("MacPherson"), a lawyer working with Jacobs to effectuate the restructuring of NJ Metro Design, filed a certificate of formation for "Metro Design USA, LLC" ("DE Metro Design") through a service company on January 12, 2015.[25] Jacobs was the "placeholder owner of [DE Metro Design]

---

[21] *Id.* ¶¶ 5, 7.

[22] Investors' Mot. Dismiss, Ex. C ("Lausar Note Purchase Agreement"); Jacobs Aff. ¶¶ 3–5.

[23] Jacobs Aff. ¶ 5; Investors' Reply, Ex. K ¶¶ 4, 12 ("MacPherson Aff.").

[24] Jacobs Aff. ¶ 4–6; MacPherson Aff. ¶ 4; Lausar Note Purchase Agreement at 1 (second "Whereas" clause) ("WHEREAS, the Purchaser, as a condition to entering into this Agreement, requires that the Company . . . enter into an agreement (the 'Merger Agreement') pursuant to which it will merge with and into a newly formed Delaware limited liability company ('New Metro') and that New Metro will enter into an amended and restated operating agreement (the 'New Operating Agreement').").

[25] Compl., Ex. 1; MacPherson Aff. ¶¶ 2, 12.

6

pending consummation of the merger."[26] Despite the steps taken to effectuate NJ Metro Design's commitment to Lausar, the anticipated merger never occurred due to alleged misconduct of one of NJ Metro Design's principals, Warren S. Vogel ("Vogel").[27]

### D. The Relationship Between the Investor Defendants and AmRock

Sometime in late 2014 or early 2015, during the time NJ Metro Design was working toward restructuring, Jacobs introduced AmRock to Defendants Greg Wetanson and Maxine Wetanson (the "Wetansons"), who were interested in investing in a restructured NJ Metro Design.[28] On April 14, 2015, AmRock and the Wetansons entered into an "Assignment Agreement." Pursuant to the Assignment Agreement, AmRock assigned its interest in the Purchase and Sale Agreement and the Forbearance Agreement to the Wetansons.[29]

Shortly after AmRock and the Wetansons entered into the Assignment Agreement, Vogel allegedly pledged all of NJ Metro Design's equity to two third-

---

[26] Jacobs Aff. ¶ 17. AmRock denies any knowledge of the formation of DE Metro Design. Tomasino Aff. ¶ 16 ("AmRock only learned about [DE] Metro [Design] when it read the Complaint.").

[27] *Id.* ¶¶ 12–14. Vogel, among other alleged misdeeds, failed to disclose substantial back taxes that NJ Metro Design owed the State of New Jersey. Investors' Mot. Dismiss ¶¶ 17, 25–26.

[28] Compl. ¶ 39; Investors' Reply, Ex. I ¶¶ 3–4 ("Wetansons Aff."). The Complaint also alleges that AmRock was heavily indebted to the Wetansons. Compl. ¶ 25. This alleged indebtedness is linked to the allegation that the Investor Defendants, at some point, took over control of AmRock and, thereby, "sought, whilst standing in AmRock's shoes, to also take over control of NJ Metro Design." Compl. ¶ 38. AmRock submitted the sworn affidavit of Frank Tomasino, a managing member of AmRock, who denies that AmRock has ever been indebted to any of the Investor Defendants. Tomasino Aff. ¶¶ 20–21.

[29] Investors' Mot. Dismiss, Ex. D.

party individuals.[30]   According to Jacobs, this action was inconsistent with NJ Metro Design's commitment to restructure NJ Metro Design and merge it into DE Metro Design.[31]   Consequently, Jacobs abandoned his efforts to restructure NJ Metro Design "because no third parties would deal with Warren Vogel and the uncertainty in equity ownership of [NJ Metro Design] made it impossible to effectuate the restructuring."[32]

As of April 2015, NJ Metro Design was failing, if not completely insolvent.[33]   At that time, the Wetansons contacted Jacobs to help minimize their losses.[34]   The Wetansons, with Jacobs' assistance, "appointed" DE Metro Design as their "agent" to sell inventory purchased pursuant to the Purchase and Sale Agreement and the Forbearance Agreement.[35]   In October 2015, Jacobs and the Wetansons changed DE Metro Design's name to Lloyd Harbor Partners, LLC ("Lloyd Harbor").[36]   The name DE Metro Design was changed to Lloyd Harbor

---

[30] Jacobs Aff. ¶ 12.

[31] *Id.*

[32] *Id.* ¶¶ 12–14.

[33] In a Notice of Default and Termination that RBC sent to NJ Metro Design on April 1, 2015, RBC recounted the history of NJ Metro Design's defaults under the Factoring Agreement. Investors' Mot. Dismiss, Ex. E.  In that Notice, RBC stated that it previously gave NJ Metro Design notice of multiple "Events of Default" under the Factoring Agreement on November 7, 2013. *Id.*  Despite NJ Metro Design being in default for more than a year, RBC did not accelerate NJ Metro Design's payment obligations, and as of April 1, 2015, when the Notice of Default and Termination was sent, RBC stated that NJ Metro Design owed RBC $850,813.50. *Id.*

[34] Wetansons Aff. ¶ 11.

[35] *Id.* ¶ 14; Jacobs Aff. ¶¶ 15–17.

[36] Jacobs Aff. ¶ 17; Wetansons Aff. ¶ 14; Plaintiff's Response in Opposition to Defendant Greg and Maxine Wetanson, Sean MacPherson and Robert Jacobs' Motion to Dismiss for Lack of Personal Jurisdiction, Ex. 5 ("RBC Resp. Investors' Mot. Dismiss").

because the NJ Metro Design name allegedly "had a very negative stigma attached to it," such that a perceived relationship between the entities was undesirable.[37] According to the Investor Defendants, DE Metro Design was not utilized to impersonate NJ Metro Design, but rather, as a matter of convenience, to save the Wetansons from going "through [the] mitigation process in their individual capacities."[38]

According to RBC, however, Defendants formed and utilized DE Metro Design with the intention of passing it off as NJ Metro Design.[39] As evidence that the Investor Defendants usurped NJ Metro Design's identity, RBC highlights the Wetansons' sale of inventory, through DE Metro Design, to retailers under vendor account numbers assigned to NJ Metro Design.[40]

## III. STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction under Superior Court Civil Rule 12(b)(2), the plaintiff bears the burden to present "a *prima facie* case establishing jurisdiction over a non-resident."[41] The "plaintiff[] must show that an exercise of personal jurisdiction . . . would be consistent with Delaware

---

[37] Jacobs Aff. ¶¶ 15, 17; Wetansons Aff. ¶¶ 12, 14.
[38] Jacobs Aff. ¶ 17; Wetansons Aff. ¶ 14.
[39] RBC Resp. Investors' Mot. Dismiss at 3–6.
[40] Compl. ¶ 47.
[41] *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 974 (Del. Ch. 2000) (citing *Hart Holding Co. Inc. v. Drexel Burnham Lambert, Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991)).

9

statutory law and federal constitutional law,"[42] and the Court may look beyond the pleadings to determine whether it has personal jurisdiction, viewing all factual inferences in the light most favorable to the plaintiff.[43]

## IV. DISCUSSION

### A. Alleged Bases for Personal Jurisdiction Over Defendants

As an initial matter, the Investor Defendants assert that the Court does not have personal jurisdiction over Defendants because they are nonresidents and no wrongful conduct occurred. The Investor Defendants argue that the Wetansons owned the inventory outright under the terms of the Forbearance Agreement, and RBC "cannot assert a *lien*, much less any ownership interest, over property that its debtor, [NJ Metro Design], does not own."[44] This argument, however, does not resolve the Motion to Dismiss for lack of personal jurisdiction because RBC does not merely allege that the inventory belonged to NJ Metro Design. RBC alleges that the Wetansons' sale of inventory was accomplished through the usurpation of

---

[42] *Chandler v. Ciccoricco*, 2003 WL 21040185, at *8 (Del. Ch. May 5, 2003) (citing *Newspan, Inc. v. Hearthstone Funding Corp.*, 1994 WL 198721, at *3 (Del. Ch. May 10, 1994)).

[43] *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at *3 (Del. Ch. Mar. 3, 2005) (first citing *Chandler*, 2003 WL 21040185, at *8; then citing *Computer People, Inc. v. Best Int'l Grp., Inc.*, 1999 WL 288119, at *5 (Del. Ch. Apr. 27, 1999)).

[44] Investors' Reply at 2. In the Forbearance Agreement, NJ Metro Design agreed "that all inventory held by [NJ Metro Design] is owned by AmRock, and [NJ Metro Design] is holding such inventory for and on behalf of AmRock, and subject to AmRock's direction and control." Forbearance Agreement ¶ 7. NJ Metro Design also agreed that ownership of inventory would pass to NJ Metro Metro Design "IMMEDIATELY PRIOR TO the delivery of the applicable items to the third party purchaser." *Id.* Thus, according to the Investor Defendants, after AmRock and NJ Metro Design entered into the Forbearance Agreement, the inventory was not NJ Metro Design's property, and, therefore, RBC's security interest in NJ Metro Design's assets is irrelevant.

10

NJ Metro Design's intangible assets, including NJ Metro Design's "name, business contacts, existing supply relationships . . . and other proprietary information."[45] Accordingly, the Court will consider RBC's alleged bases for the Court's personal jurisdiction over Defendants.

RBC argues that the Court has jurisdiction over all Defendants under Delaware's long-arm statute, 6 *Del. C.* § 3104, and the *Instituto Bancario* conspiracy theory of jurisdiction.[46] "[T]he conspiracy theory does not support jurisdiction unless it works in tandem with a statute authorizing service of process."[47] Thus, RBC cannot assert conspiracy jurisdiction unless it first presents a *prima facie* case that the Court has personal jurisdiction over one of the alleged conspirators under Delaware's long-arm statute.

---

[45] Compl. ¶ 13. To support this allegation, RBC highlights evidence that the Wetansons and Jacobs contacted retailer clients of NJ Metro Design, sold inventory to those clients, and transacted the sales using account numbers assigned to NJ Metro Design. Compl. ¶¶ 46–47. *See* Wetansons Aff. ¶¶ 11–14; Jacobs Aff. ¶¶ 15–17; Investors' Mot. Dismiss ¶ 32 ("The representatives at [Home Depot] indicated that they did not want to be burdened with setting up new client numbers and therefore would allow Jacobs/Wetansons to process orders through old [NJ Metro Design] account numbers since [NJ Metro Design] was no longer authorized to use them.").

[46] Under the *Instituto Bancario* conspiracy theory of personal jurisdiction, Delaware Courts have personal jurisdiction over a nonresident conspirator if the plaintiff can make a factual showing that: "(1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy." *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982). Conspiracy jurisdiction is the only alleged basis for the Court's exercise of personal jurisdiction over AmRock. RBC Resp. AmRock's Mot. Dismiss at 17–26.

[47] *Chandler*, 2003 WL 21040185, at *10 (citing *HMG/Courtland Properties, Inc. v. Gray*, 729 A.2d 300, 307 (Del. Ch. 1999)).

RBC also argues that Jacobs and the Wetansons are "managers" of DE Metro Design, and therefore, the Court has personal jurisdiction over Jacobs and the Wetansons pursuant to Delaware's implied consent statute, 6 *Del. C.* § 18-109(a).[48]

## B. Personal Jurisdiction Under Delaware's Long-Arm Statute

Delaware courts apply a two-pronged analysis to determine whether a plaintiff has met its burden of establishing personal jurisdiction over a nonresident under the long-arm statute.[49] The Court must first consider whether the long-arm statute is satisfied and then determine "whether subjecting the nonresident to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment."[50]

Delaware's long-arm statute, 10 *Del. C.* § 3104(c), confers personal jurisdiction over any nonresident who:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State; [or]
>
> (3) Causes tortious injury in the State by an act or omission in this

---

[48] RBC Resp. Investors' Mot. Dismiss at 19–21.

[49] *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437–38 (Del. 2005) (citing *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 769 (Del. 1986)); *see also Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *6 (Del. Ch. May 7, 2008), *aff'd*, 984 A.2d 124 (Del. 2009) ("[T]he burden rests on the plaintiff to demonstrate the two bedrock requirements for personal jurisdiction: (1) a statutory basis for service of process; and (2) the requisite 'minimum contacts' with the forum to satisfy constitutional due process.").

[50] *AeroGlobal*, 871 A.2d at 438 (citing *LaNuova*, 513 A.2d at 769).

12

State . . . .[51]

RBC argues that three different acts confer personal jurisdiction under the long-arm statute: (1) the formation of DE Metro Design; (2) the filing of the Certificate of Amendment to change the name of DE Metro Design to Lloyd Harbor; and (3) the sale of the inventory "for distribution on the Eastern seaboard, including in Delaware."[52]

## 1. The Filing of the Certificate of Formation for DE Metro Design

"Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction."[53] "[A] single act of incorporation, *if done as part of a wrongful scheme*, will suffice to confer personal jurisdiction under § 3104(c)(1)."[54]

RBC argues that Defendants "set up a dummy corporation in Delaware that intentionally mimicked the name of a company in neighboring New Jersey" in order to sell NJ Metro Design's inventory (in which RBC had a senior security

---

[51] 10 *Del. C.* § 3104(c).
[52] RBC Resp. Investors' Mot. Dismiss at 16–18.
[53] *LaNuova*, 513 A.2d at 768 (first citing *Speakman Co. v. Harper Buffing Mach. Co.*, 583 F. Supp. 273, 275 (D. Del. 1984); then citing *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.*, 505 F.Supp. 777, 780 (D. Del.1980)).
[54] *Connecticut Gen. Life Ins. Co. v. Pinkas*, 2011 WL 5222796, at *2 (Del. Ch. Oct. 28, 2011) (first citing *Papendick v. Bosch*, 410 A.2d 148 (Del. 1979); then citing *Cairns v. Gelmon*, 1998 WL 276226, at *3 (Del. Ch. May 21, 1998)). "But merely participating in the formation of a Delaware entity, without more, does not create a basis for jurisdiction in Delaware. Instead, the formation must be 'an integral component of the total transaction to which plaintiffs cause of action relates.'" *Id.* (quoting *Shamrock Holdings of Cal., Inc. v. Arenson*, 421 F.Supp.2d 800, 804 (D. Del. 2006))).

interest).[55] The Investor Defendants do not deny that the name DE Metro Design (Metro Design USA, LLC) was intended to mimic the name of NJ Metro Design (Metro Design USA LLC).[56] In fact, the Investor Defendants point to the similarity between the names as evidence supporting their principle argument—DE Metro Design was *legitimately* formed as a condition of the Note Purchase Agreement between NJ Metro Design and Lausar, and therefore, the formation cannot be considered part of a wrongful scheme.[57]

Pursuant to the Note Purchase Agreement, NJ Metro Design agreed to "merge with and into a newly formed Delaware limited liability company."[58] MacPherson—who drafted the Certificate of Formation and filed it through a service company—affirms that NJ Metro Design was intended to merge into DE Metro Design as part of the transaction with Lausar, a third-party investor not accused of any wrongdoing in this case.[59] Consistent with MacPherson's affidavit, in a complaint filed by Lausar against Vogel in the United States Bankruptcy Court for the District of New Jersey, Lausar alleged that Vogel breached the terms of the Note Purchase Agreement when he failed to consummate the planned merger of NJ

---

[55] RBC Resp. Investors' Mot. Dismiss at 15.

[56] Investors' Reply at 4 ("Having [DE Metro Design's] name be as similar as possible to [NJ Metro Design's] name was deliberate as the restructuring contemplated a seamless continuation of business when [NJ Metro Design] merged with and into [DE Metro Design].").

[57] Investors' Mot. Dismiss ¶¶ 4–15, 36, 42, 56, 69, 72.

[58] Note Purchase Agreement at 1 (second "Whereas" clause).

[59] MacPherson Aff. ¶¶ 4, 9, 12.

14

Metro Design with DE Metro Design.[60]

In light of the documents and sworn affidavits submitted by the Investor Defendants, RBC's allegation that the filing of a Certificate of Formation for DE Metro Design was part of a wrongful scheme is conclusory and insufficient to support of *prima facie* showing of personal jurisdiction.[61]

### 2. The Filing of the Certificate of Amendment for DE Metro Design

RBC alleges that the filing of the Certificate of Amendment to change the name of DE Metro Design to Lloyd Harbor constitutes a transaction of business that confers personal jurisdiction over Defendants.[62] As stated by the Court of Chancery in *Sample v. Morgan*, "[t]he involvement of a defendant in arranging, either directly or through an agent . . . for the filing of a corporate instrument in Delaware that facilitated transactions under challenge in litigation . . . has been repeatedly recognized as sufficient to constitute the transaction of business under § 3104(c)(1)."[63] However, even if the filing of the Certificate of Amendment in

---

[60] Investors' Reply, Ex. G.

[61] RBC argues in a footnote that even if the Court accepts the Investor Defendants' argument that DE Metro Design was legitimately formed, "any such formation pursuant to the terms of the Note Purchase Agreement would have been on behalf of [NJ] Metro Design," and, therefore, NJ Metro Design would have an ownership interest in DE Metro Design that has been usurped by Defendants. RBC Resp. Investors' Mot. Dismiss at 16 n.9. According to RBC, "such misappropriation of a Delaware entity in furtherance of a fraud would serve as yet another act sufficient to convey jurisdiction over Defendants." *Id.* RBC cites no statute or caselaw to support this statement. Accordingly, RBC has not satisfied its burden of establishing a *prima facie* showing that the Court can exercise personal jurisdiction over Defendants.

[62] RBC Resp. Investors' Mot. Dismiss at 16.

[63] *Sample*, 935 A.2d at1057; *see also id.* at 1057 n.42 (listing examples of cases where the filing of a corporate instrument in Delaware has supported the exercise of personal jurisdiction). "The

15

this case constitutes a transaction of business under § 3104(c)(1),[64] the burden remains on RBC to show that the alleged causes of action arise from that transaction.[65] "The 'arising from' language requires the defendant's act set 'in motion a series of events which form the basis for the cause of action before the court.'"[66]

RBC argues that the filing of the Certificate of Amendment relates to the alleged causes of action because the Investor Defendants changed the name of DE Metro Design "in order to mask the wrongful intent of their actions."[67] This allegation is insufficient to demonstrate that the filing of the Certificate of Amendment set in motion a series of events which form the basis for the alleged causes of action.

First, the Certificate of Amendment was filed on October 6, 2015,[68] *after*

---

'single act' or specific jurisdiction subsections of § 3104(c), such as § 3104(c)(1), only allow jurisdiction over causes of action that are closely intertwined with the jurisdictional contact." *Id.* at 1057 n.43 (citing Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 3–5[a][1][iii] (2005))).

[64] The long-arm statute "is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992).

[65] 10 *Del. C.* § 3104(c) ("As to a cause of action brought by any person arising from any of the acts enumerated in this section . . . ."); 10 *Del. C.* § 3104(j) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from any act enumerated in this section may be asserted against the person.").

[66] *Haisfield v. Cruver*, 1994 WL 497868, at *4 (Del. Ch. Aug. 25, 1994) (quoting *Sears, Roebuck & Co. v. Sears plc*, 752 F.Supp. 1223, 1227 (D. Del. 1990)).

[67] RBC Resp. Investors' Mot. Dismiss at 16.

[68] RBC Resp. Investors' Mot. Dismiss, Ex. 5.

16

RBC filed the instant Complaint.[69]   Second, in their Motion to Dismiss, the Investor Defendants *volunteered* the fact that they sold inventory through DE Metro Design and that they changed the name of DE Metro Design to Lloyd Harbor.[70]   RBC did not allege that the name change was evidence of wrongful intent until after the Investor Defendants admitted that they changed the name of DE Metro Design to Lloyd Harbor.[71]   In response to RBC's allegation, Jacobs and the Wetansons, in their sworn affidavits, stated that they changed the name because "the 'Metro' name had a very negative stigma attached to it."[72]   Finally, RBC alleges that the Investor Defendants and DE Metro Design "usurped the name" of NJ Metro Design.[73]   If anything, changing the name of DE Metro Design to Lloyd Harbor would have eliminated confusion caused by the similarity of the names NJ Metro Design and DE Metro Design.

Thus, RBC has not met its burden of presenting a *prima facie* case to show that the alleged causes of action arise from the filing of the Certificate of Amendment.

---

[69] The Complaint was filed on September 25, 2015.
[70] Investors' Mot. Dismiss ¶ 33.
[71] RBC Resp. Investors' Mot. Dismiss at 16.
[72] Jacobs Aff. ¶ 17; Wetansons Aff. ¶ 14.
[73] Compl. ¶ 13.

17

### 3. The Utilization of DE Metro Design to Sell Inventory

RBC argues that the Wetansons' sale of inventory through DE Metro Design confers jurisdiction because: (1) the sale of inventory is a transaction of business under § 3104(c)(1); (2) the sale of inventory was a contract to supply goods under § 3104(c)(2); and (3) any impairment of RBC's interests caused by the sale of inventory constitutes tortious injury under § 3104(c)(3).

To support these conclusions, RBC alleges that the Wetansons sold inventory "for distribution on the Eastern seaboard, including in Delaware."[74] Other than this conclusory statement, RBC has not presented any evidence that the Wetansons sold inventory in Delaware, the Wetansons contracted to sell inventory in Delaware, or that any inventory was distributed in Delaware. Rather, the "Routing and Distribution Instructions" RBC submitted as evidence that the Wetansons sold inventory to T.J. Maxx lists purchase orders associated with Charlotte, North Carolina, Worcester, Massachusetts, Evansville, Indiana, and North Las Vegas, Nevada.[75] Additionally, through sworn affidavits, the Investor Defendants aver that no inventory was sold for distribution in Delaware.[76] RBC's conclusory allegation is insufficient to satisfy RBC's burden to present a *prima facie* case that this Court has personal jurisdiction over Defendants under

---

[74] RBC Resp. Investors' Mot. Dismiss at 17–18.
[75] *Id.*, Ex. 4.
[76] Wetansons Aff. ¶ 16; Jacobs Aff. ¶ 19.

18

§ 3104(c).

RBC also alleges that the Wetansons' sale of inventory caused tortious injury to RBC in Delaware by diminishing "demand for other sellers" in the market and by "wrongfully prevent[ing RBC] from using the Metro Design name in Delaware . . . because that name was already wrongfully claimed by [DE Metro Design]."[77]

The long-arm statute does not confer personal jurisdiction based merely on tortious injury in Delaware, but on "tortious injury in the State [*caused*] by an act or omission *in this State.*"[78] Because RBC has not established a *prima facie* case that Jacobs or the Wetansons contracted to supply any inventory in Delaware (either individually or through DE Metro Design) or that the Wetansons or DE Metro Design sold any inventory in Delaware, RBC's alleged injury based on impairment of the market likewise fails. Moreover, RBC's allegation that it has suffered a tortious injury because Defendants have prevented RBC from using NJ Metro Design's name in Delaware fails because RBC has not alleged that it ever attempted to use NJ Metro Design's name or was unable to do so. Consequently, RBC has not made a *prima facie* case that the Court has personal jurisdiction over Defendants based on the Wetansons' utilization of DE Metro Design to sell

---

[77] RBC Resp. Investors' Mot. Dismiss at 18.
[78] 10 *Del. C.* § 3104(c)(3) (emphasis added); *Abajian v. Kennedy*, 1992 WL 8794, at *10 (Del. Ch. Jan. 17, 1992) ("In order to find jurisdiction under § 3104(c)(3), the defendant must have caused a tortious injury *in Delaware* by its acts or omissions *in Delaware*.").

19

inventory.

Because RBC has not presented a *prima facie* case that the long-arm statute confers personal jurisdiction over any of the Defendants, RBC's assertion of personal jurisdiction based on the conspiracy theory of jurisdiction necessarily fails.[79] The only basis for jurisdiction asserted against AmRock is conspiracy jurisdiction, and therefore, AmRock's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED.** The only basis for jurisdiction asserted against MacPherson is the long-arm statute and conspiracy jurisdiction, and therefore, as to MacPherson, the Investor Defendants' Motion to Dismiss is **GRANTED.**

## C. Personal Jurisdiction Over Jacobs and the Wetansons Under 6 *Del. C.* § 18-109

The "implied consent" provision of the Delaware Limited Liability Company Act, 6 *Del. C.* § 18-109, authorizes service of process on the managers of Delaware limited liability companies. A "manager" is either "a person who is a manager as defined in § 18-101(10)" or "a person, whether or not a member of a limited liability company, who . . . participates materially in the management of the limited liability company."[80] RBC alleges that Jacobs and the Wetansons have impliedly consented to personal jurisdiction because they participated materially in

---

[79] *Chandler*, 2003 WL 21040185, at *10 ("[T]he conspiracy theory does not support jurisdiction unless it works in tandem with a statute authorizing service of process." (citing *HMG/Courtland*, 729 A.2d at 307).

[80] 6 *Del. C.* § 18-109(a).

the management of DE Metro Design and are, therefore, "managers" of DE Metro Design.[81]

Assuming, *arguendo*, that Jacobs and the Wetansons participated materially in the management of DE Metro Design (such that they are "managers' under § 18-109(a)), the burden remains on RBC to show that the exercise of personal jurisdiction in this case comports with due process.[82] Section 18-109(a) provides that this Court may assert personal jurisdiction over a nonresident manager of a Delaware limited liability company "in all civil actions . . . involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company . . . ." To invoke the "involving or relating to" clause of § 18-109(a), a plaintiff must establish that the exercise of personal jurisdiction over a defendant would not offend due process.[83] Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[84]

Delaware Courts have held that due process will not be offended by the exercise of personal jurisdiction under § 18-109(a) if a plaintiff can show that: "(1)

---

[81] RBC Resp. Investors' Mot. Dismiss at 19–21.

[82] *PT China LLC v. PT Korea LLC*, 2010 WL 761145, at *5 (Del. Ch. Feb. 26, 2010) ("Even if one is served pursuant to § 18-109, personal jurisdiction must still be consistent with due process.").

[83] *Id.*

[84] *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

21

the allegations against the defendant-manager focus centrally on his rights, duties and obligations as a manager of a Delaware LLC; (2) the resolution of the matter is inextricably bound up in Delaware law; and (3) Delaware has a strong interest in providing a forum for the resolution of the dispute relating to the manager's ability to discharge his managerial functions."[85]

RBC's causes of action against Jacobs and the Wetansons focus on Jacobs and the Wetansons' alleged usurpation of NJ Metro Design's assets. This usurpation was allegedly made possible by Jacobs' previous work attempting to restructure NJ Metro Design,[86] and the Wetansons' purchase of AmRock's position as a creditor of NJ Metro Design pursuant to the Assignment Agreement.[87] According to the Wetansons, they appointed DE Metro Design as their agent because they did not want to sell inventory in their individual capacities.[88]

---

[85] *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *9 (Del. Ch. June 15, 2011) (first citing *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *8 (Del. Ch. Dec. 1, 2009); then citing *Assist Stock Mgmt. LLC v. Rosheim*, 753 A.2d 974, 981 (Del. Ch. 2000)), *aff'd*, 38 A.3d 1254 (Del. 2012); *see also Assist Stock Mgmt.*, 753 A.2d at 978 ("The language of this statute, of course, suggests the exercise of jurisdiction over [the manager of a Delaware limited liability company] in an action properly alleging a breach of fiduciary duty in his managerial capacity. The more difficult question is whether, and if so, in what circumstances it permits the exercise of jurisdiction in the other disputes involving or relating to the business of [the Delaware limited liability company]." (footnote omitted)).

[86] Compl. ¶ 8 ("Jacobs is a Manager of Metro Design USA, LLC and Metro Design USA LLC"); Jacobs Aff. ¶ 15 ("The Wetansons contacted me and asked for my assistance in recouping their investment since I was familiar with the situation.").

[87] Compl. ¶ 30; Wetansons Aff. ¶ 5 ("We invested $1,000,000 into [NJ Metro Design] through taking assignment of AmRock's senior secured position . . . .").

[88] Wetansons Aff. ¶ 14.

The Court will make "a realistic evaluation of the relationship" that Jacobs and the Wetansons have established with Delaware to determine whether it is keeping with traditional notions of fair play and substantial justice to require them to defend this dispute in Delaware.[89] RBC does not allege that Jacobs and the Wetansons breached fiduciary duties as managers of DE Metro Design created by Delaware law and of special concern to Delaware. RBC is not an entity to whom Jacobs and the Wetansons owe a fiduciary duty, and the alleged wrongs have not been committed against a Delaware limited liability company, but rather, against RBC, a Louisiana limited liability company, as the creditor of NJ Metro Design, a New Jersey limited liability company. Finally, RBC only asserts conclusory allegations that Jacobs and the Wetansons committed tortious acts within Delaware or that the alleged tortious conduct had any impact in Delaware.

The instant case does not "focus centrally on [] rights, duties and obligations" of Jacobs and the Wetansons as managers of a Delaware limited liability company; it is not "inextricably bound up in Delaware law;"[90] and RBC has not demonstrated that "Delaware has a strong interest in providing a forum for the resolution of the dispute" relating to a manager's ability to discharge their

---

[89] *Assist Stock Mgmt*, 753 A.2d at 980 (quoting *In re USACafes, L.P. Litig.*, 600 A.2d 43, 52 (Del. Ch. 1991)).

[90] RBC's only argument involving choice of law is its argument that Florida law governs the Purchase and Sale Agreement. RBC Resp. Investors' Mot. Dismiss at 11 n.7.

managerial functions.[91]  Rather, as discussed above, this case involves tort claims

unconnected with the internal affairs of DE Metro Design.[92]

RBC has not met its burden of presenting a *prima facie* case that the exercise

of personal jurisdiction over Jacobs and the Wetansons under 6 *Del. C.* § 18-109

comports with due process, and therefore, as to Jacobs and the Wetansons, the

Investor Defendants' Motion to Dismiss is **GRANTED.**

**D.  Personal Jurisdiction Pursuant to 6 *Del. C.* § 18-105 Over DE Metro Design**

Service of process on domestic limited liability companies is governed by

6 *Del. C.* § 18-105.  While the Investor Defendants include DE Metro Design in

the title of their Motion to Dismiss for lack of personal jurisdiction and in their

prayer for relief, they do not make any specific arguments regarding the Court's

personal jurisdiction over DE Metro Design.

---

[91] In contrast to this case, in *Assist Stock Management LLC v. Rosheim*, a defendant-manager challenged personal jurisdiction in a dispute that involved: (1) ownership interests in a Delaware limited liability company and (2) the manager-defendant's rights—as a manager of the Delaware limited liability company—"to provide or withhold consent to the admission of additional members into [the Delaware limited liability company's subsidiary, also a Delaware limited liability company]." 753 A.2d at 977. The Court of Chancery concluded that the exercise of personal jurisdiction over the defendant-manager comported with due process because "failure of co-managers to agree as to the scope of their respective rights and obligations in their capacity of managers . . . [is] a matter of substantial interest to this state" and because "[t]he controlling agreement relies on Delaware law to delineate those rights and obligations." *Id.* at 981.

[92] *See USACafes*, 600 A.2d at 52 (distinguishing between the claims brought in the case and "tort or contract claims unconnected with the internal affairs or corporate governance issues that Delaware law is especially concerned with."); *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 292 (Del. 2016) (finding that the exercise of personal jurisdiction under the director implied consent statute, 10 *Del. C.* § 3114, comported with due process where, *inter alia*, the claims against the director "involve his actions in his official capacity of negotiating contracts that involved the change of control of a Delaware public corporation.").

DE Metro Design is a limited liability company incorporated in Delaware. RBC served DE Metro Design as a domestic limited liability company,[93] and DE Metro Design answered the Complaint.[94] Therefore, as to DE Metro Design, the Investor Defendants' Motion to Dismiss is **DENIED.**

## V. CONCLUSION

For the foregoing reasons, Defendants Metro Design USA, LLC, Greg and Maxine Wetanson, Sean MacPherson and Robert Jacobs' Motion to Dismiss is **GRANTED in part, and DENIED in part**. Defendant Amrock Capital, LLC's Motion to Dismiss Complaint for Lack of Personal Jurisdiction is **GRANTED**.

**IT IS SO ORDERED.**

_____
Jan. R. Jurden, President Judge

---

[93] Praecipe (Trans. ID. 57948186) (requesting that a summons be issued to DE Metro Design pursuant to Superior Court Civil Rule 4(f)(1) and 6 *Del. C.* § 18-105).

[94] Defendant Metro Design USA, LLC's Answer and Affirmative Defenses (Trans. ID. 58094772).